## The State v. Russel Stebbins, et al.

1. Since the adoption of the constitution, in this State, the right to exercise banking powers is a franchise.
2. The Legislature has the power to limit at all times the issuance and circulation of paper currency, when not issued under previous express authority.
3. A corporate body can only exercise such powers as are specifically granted to it, or such as are necessary to carry its object into effect.
4. The act of 1818, incorporating the St Stephen's Steamboat Company, did not grant to said corporation banking powers.
5. The act of 1827, repealing in part the former, is constitutional.

This was an indictment found in the Circuit Court of Mobile county, against Stebbins and eight others, charg-

ing them with having exercised banking privileges, in issuing a note for circulation as a *bank note*, without the authority of law, and contrary to a statutory enactment.

The indictment consisted of two counts: the first charged that the defendants, (nine in number, in their *individual* names,) merchants, did on the 17th day of April, 1827, &c. issue for circulation, without the authority of law, a certain paper writing, purporting to be a *bank note*, as a bank note, &c. as follows:

" (2) A                                No. 815.   Two

On demand at their Bank in Mobile, the St Stephen's Steamboat Company promise to pay J. Bloodgood, or bearer, two dollars.   Mobile, June 1, 1826.

C. C. HAZARD, *Cash'r.*        R. STEBBINS, *Pres't.*"
Contrary to the form of the statute, &c.

The second count is in substance the same, except that after charging the defendants in their individual names, it states that " they, together with certain other persons, to the jurors unknown, and the whole of them styling themselves a *body corporate*, by the name and description of *the St Stephen's Steamboat Company*," on, &c. (as in the first count ) did as such body corporate, by the name and description of " the St Stephen's Steamboat Company," issue, &c.

To this indictment the defendants pleaded "not guilty," and the jury sworn to try the issue returned into Court a special verdict, by which they found " that the Legislative Council and House of Representatives of the Alabama Territory, on the 10th day of February, 1818, passed an act, entitled ' an act to incorporate the St Stephen's Steamboat Company,' in the following words, viz: Section 1. *Be it enacted by the Legislative Council and House of Representatives of the Alabama Territory, in General Assembly convened,* That James Pickens, (and five other persons therein named,) and their associates, be and they are hereby constituted and appointed a body corporate, by the name and style of the St Stephen's Steamboat Company, and by that name shall be, and they are hereby made able and capable in law, to have, purchase, possess, receive, enjoy and retain to them and their successors, lands, rents, tenements, hereditaments, goods, chattels and effects of whatever kind, nature and quality, and the same to sell, grant, demise, alien and dispose of; to sue and be sued, plead and be impleaded, answer and

be answered, defend and be defended in any suit, action, matter or thing depending in any court of law or equity; and also to make, have and use a common seal, and the same to break, alter and renew at their pleasure; and also to ordain, establish, and put in execution, such bye-laws, ordinances and regulations, as they shall deem necessary and convenient for the government of the said corporation, not contrary to the constitution thereof, or the laws of the United States, or the Territory. And generally to do and execute all and singular the acts, matters and things which to them may appear necessary, or which to them it may appertain to do as incident to bodies corporate, under the restrictions above mentioned. [a] "

They further find, " that under and by virtue of the powers granted, and as part of the rights, privileges and immunities vested by said act, as the said corporation contended, the said corporation on the 1st of February, 1826. in conformity to rules and regulations for that purpose by them previously prescribed, did commence issuing notes, receiving deposites, making discounts, and transacting all other business usual for banking institutions to transact; and that said corporation has from time to time hitherto, and still does continue to issue notes, receive deposites, make discounts, and transact all other business usual for banks to do and transact." They also find "that the present defendants compose the board of directors of said corporation, duly appointed by the stockholders thereof, for the year 1827, and that the bill or note described in the indictment aforesaid, was by them issued in that character, and as a part of their said banking operations, on the day laid in the said indictment."

It is further found by the verdict, " that the General Assembly of the State of Alabama, on the 12th day of January, 1827, passed ' an act to repeal in part an act passed at St Stephens, February 10th, 1818, incorporating the St Stephen's Steamboat Company,' (which is also recognized as a public act,) in the words following, to wit: '*Be it enacted*, &c. That so much of the act entitled an act incorporating the St Stephen's Steamboat Company, passed the 10th February, 1818, as might by construction, seem to authorize the said company or its agents, to issue any tickets, orders, bills or promissory notes of any value or description, be and the same is hereby repealed and made void. *And be it further enacted,*

JANUARY 1828.

The State
v.
Stebbins, et al.

a Laws Ala. 72.

that any person, body corporate, company or association, issuing any note for circulation as a bank note, without the authority of law, be fined in the sum of one hundred dollars, and imprisoned not more than six months." [a]

The jurors referred the said special matters to the Court for their opinion, and if upon the whole matter, the defendants were guilty in law as charged in the indictment, they so found them, otherwise not guilty.

The Court below, upon this verdict gave judgement for the State. fined each of the defendants one hundred dollars, and sentenced them to one hour's imprisonment, according to the requirements of the above recited statute : But reserved the question for the decision of this Court, as being novel and difficult, under the provisions of the statute in such cases, and consented that the execution of the judgement should be suspended till the decision of this Court should be rendered. It was also agreed, that the decision of the presiding Judge, (the Chief Justice,) should not preclude him from sitting on the trial of the question in the Supreme Court.

The question presented by the assignment of error is, if the conviction below was correct, or if the defendants should have been acquitted?

HITCHCOCK, for the defendants below, contended that the judgement given by the Court was erroneous, and should be reversed, and argued on the grounds following : That banking is a common law right, and not a prerogative of sovereignty or franchise; and therefore, that it is not necessary for the exercise of it to have any authority from the government; that every one is free to use banking powers ; [b] that the act of incorporation gave to the defendants below general powers, and also powers to " do and execute all acts, matters and things which may appear necessary, or which to them may appertain to do, as incident to bodies corporate." Banking is as much within the powers conferred, and is as much an incident to a body corporate, as any thing else. [c] The act does not specify any particular powers; therefore it cannot be contended that banking is excluded on the ground of not being included within the powers enumerated, or that it is excluded by implication. The very act under which the appellants were indicted, admits that the act of incorporation gives the power, " *as it would seem by construction*," to use banking privileges. If that is admit-

ted, it is sufficient; for if the power was granted by the act of 1818, it is a vested right, and surely the Legislature has not the right to abridge the powers so granted. [a]

The constitution does not take away the power of banking; it only regulates the mode in which it shall be exercised; it is only a restraint upon banks, either incorporated or unincorporated; but it does not prohibit individual or private banks. If it does restrain all corporations since its adoption, still it does not interfere with the powers of the defendants in this matter, inasmuch as they were chartered before the constitution was adopted. Its operation must be confined to those created since the constitution. It is well settled that a change of government does not alter private rights. [b] If the right to carry on banking operations is denied them, then the Legislature may deny them every right, because there are no particular powers given them; all power is therefore given to do any thing not prohibited when they were incorporated. [c]

PERKINS, Attorney General, for the State.

Whether the Court erred or not in the decision, and what was the authority and power which the defendants had when indicted, depends, I think, mainly on the construction to be given to the act of 1818. With a view to the correct construction of the powers granted by this act, which incorporates the "St. Stephen's Steamboat Company," we must consider what corporations are; in whom the power of creating them abides; for what purposes they are created; the end of the powers granted them; the rule for the construction of their powers; and in what cases the body creating them have the right to deprive them of the powers granted, if any.

Corporations then, are defined to be bodies politic or corporate, joined into one body, and who are qualified by the power enacting them, to have, purchase, receive, possess, enjoy, &c. &c. property in their corporate character, so as thereby to effect some particlar object or beneficial purpose, the tendency of which is to promote the general interest of the State or goverment which creates them.

To effect these objects, they are vested with all the necessary incidental powers for their particular execution, and they incur an obligation to society, to discharge those

JANUARY 1828.

The State
v.
Stebbins, et al.

[a] 9 Cranch 50.
4 Wheaton 518.

[b] 2 John. Cas. 29.
3 John. Cas 109.
Calvin's Cas. 7.
Coke 27. 2 John.
C. 376.

[c] 5 Wheat. 518.

JANUARY 1828.

The State
v.
Stebbins, et al.
duties which necessarily result from the spirit of their charter; and like natural persons, are required to act up to the end or design, whatever it be, for which their founder created them. Inasmuch as their end is to enable an association of individuals to unite their joint stock and effects, so as thereby to accomplish some particular, ostensible and definite object, productive of general good, which individual enterprise and capital is inadequate to attain; for these purposes, exclusive privileges are given them, which individuals in their natural capacity are not permitted to exercise, and which go to increase their emoluments, and operate as a restraint on the rights of individuals as members of society; for these reasons, their powers never can nor ought to be construed to extend beyond the *specific objects* for which they were created, and such as are designated expressly by law. [a]

*a* 2 Marshall 102.

Thus, I conclude in the first place, that as the law incorporating the St. Stephen's Steamboat Company, points out no object for which they were created, (except what is to be inferred from the title,) but merely makes certain persons a Steamboat Company, imposing no liabilities on them, it should be construed as completely inoperative, as not within the purposes for which corporations are created, and therefore *quo ad hoc,* not valid.

But admitting its validity to the full extent, and that they are a subsisting corporation created by the force and effect of said law, the powers granted them as insisted above, should be construed strictly. If so construed, it cannot be contended that the power of issuing notes, or the right to exercise banking powers is given them: 1st. Because there is no such power given expressly by the words of the charter. 2nd. Such power was not intended to be given; and I might add that the reason of the rule itself is made manifest, and is fortified by referring to the statute book in relation to the charters which have been granted to other incorporated institutions, where we find masonic lodges, navigation companies, library companies, and even every petty town incorporation, vested with the power of *suing and being sued,* as well as the rights to have, purchase, possess, and enjoy property, &c. &c. and that their charters give to them as much right to exercise banking powers as the act incorporating the St. Stephen's Steamboat Company; and surely no one can contend or believe that they have any such right:-

And here let me inquire if the Legislature could not con-

stitutionally prohibit those several corporations from issuing bank notes, and whether they are not competent to impose penalties on them? 3d Because, as has been well observed by an intelligent author, "as it is a function of the sovereign prerogative of every civilized society, to say what shall be the circulating currency of that society, and as the object of this power creates an obligation on the Legislature to restrict individuals from uttering paper money, possessed of only a conventional value, which panic or fraud may at any time destroy. Every principle of expediency and justice demands that this delegation should never be made, except under restrictions and securities, completely adequate to the protection of the public against the insolvency or fraud of those who are permitted to substitute their promissory paper for metallic coin." Therefore, on those principles, the power of issuing notes, or of exercising banking powers, should not be inferred.

But admitting that I may be wrong on the two first points made, I would urge that, as there is no time of duration mentioned, and no obligation incurred by the State to continue the charter, and as no duties are required, the charter should be considered as existing only during the pleasure of its founder, and that it might be dissolved by the exercise of a power that has always been claimed by the Parliament of Great Britain in similar cases.

The Parliament of Great Britain may well be assimilated to the convention that formed our constitution, as to the power of controlling and dissolving corporations. The finding of the jury shews that the company did not commence the exercise of banking powers until 1826, at least eight years after the charter was granted. In the mean time the constitution was adopted, a clause of which prohibits any bank from going into operation without complying with certain requisites therein mentioned. Will not the Court feel bound to notice its provisions, the more so as the company had failed to exercise any powers given by the charter of 1818? And here let me ask if the doctrine of non user does not apply?

But the main question is, if under the act of 1818, banking powers are granted. If such are granted. it must be alone by implication; for no such power is expressly given. Such a power cannot be implied, because it is

39

not necessary to effectuate the main object of the charter, admitting there be a main object. If any other power than such as is necessary to effectuate the main object, can be implied, then any power may be implied that was ever possessed or claimed by any corporation. But the doctrine of implication can extend only to such powers as are necessary to carry into effect the main object of the charter, and without which the main object must have failed. It is true, that if the power claimed was granted by the act of 1818, the act of 1827 could not take it away; but if the power was not granted by the act of 1818, or was repealed or limited by the constitution, (as we contend it was,) or if forfeited by non user, then it was competent for the Legislature to impose the penalty. It is presumed to be sufficiently shewn, that the power was not granted by the act of 1818 ; but if it was, the constitution certainly limited the power, by imposing conditions which do not appear by the record to have been complied with previously to the assumption of banking powers, and issuing the note in question.

PARSONS argued on the same side, and cited 2 Cowen 664, and 12 Wheaton, case of the United States' Bank against Dandridge, (Marshall's opinion,) to shew that a corporation created for insurance purposes, cannot discount notes, and that corporations have no powers but such as are expressly granted by the charter.

JUDGE SAFFOLD delivered the opinion of the Court.

IN the determination of this case, it is necessary to make a brief examination into the nature and design of corporations in general, and of this in particular. The object and necessity at all times and in every country, of incorporating companies, has been to give them perpetuity and legal authority to exercise specific powers and privileges of a nature promising some degree of public utility, and to which individuals in their natural capacity, are supposed incompetent; or such as are of a nature so far involving the general interest of society, that public policy forbids the unrestrained pursuit of them by individuals. The doctrine has universally prevailed, that a corporation can only exercise such powers as are specifically granted by the " act of incorporation," or are necessary to carry into effect the powers expressly granted.

This principle is clearly maintained by Thompson, Chief JANUARY 1828, Justice of the Supreme Court of New-York, in the same opinion referred to by the defendant's counsel to maintain another principle, deemed material to the defence. [a] The latter principle alluded to is, " that the right of banking was a common law right, belonging to individuals, and to be exercised at their pleasure." Such is the language of the Chief Justice, and is a doctrine which this Court has no disposition to disturb or question, but the deductions proper to be drawn from it, are worthy of consideration. Does it follow that corporations can claim all rights, privileges and immunities, which the law has not denied to individuals? or if they can, must they not derive such rights from the principles of the common law and general legislation ?

The State
v.
Stebbins, et al.
[a] The People vs.
Utica Ins. Co.
15 John R. 358,

If the first branch of the proposition is assumed, the consequence would be, that corporations, instead of being limited to the powers granted them, can claim irrevocably, all powers not expressly denied them. If the latter, the necessary consequence must be, that the rights and powers of corporations, like those of individuals, are general and insecure, dependant on such restraints and modifications as the Legislature may think proper to prescribe.

That corporations have only a legal, invisible, untangible existence, with powers specially granted and circumscribed, within limits necessary to the objects of their creation, is one of the prominent principles of elementary law. In the case of the *Bank of the United States against Dandridge,* [b] Chief Justice Marshall, in a dissenting opinion, but on points in which he was not opposed, says "a corporation being one entire impersonal entity, distinct from the individuals who compose it, must be endowed with a mode of action peculiar to itself, which will always distinguish its transactions from those of its members." This faculty must be exercised according to its own nature.

[b] 12 Wheat. 91.

In the case of *Head and Amory against the Providence Insurance Company,* [c] the Supreme Court said, " an individual has an original capacity to contract and bind himself in such manner as he pleases. He who acts by another, acts by himself." He who authorises another to make a writing for him, makes it himself : but with these bodies, which have only a legal existence, it is otherwise.

[c] 2 Cranch 127.

JANUARY 1828.

The State
v.
Stebbins, et al.

The act of incorporation is to them an enabling act. It gives them all the power they possess. It enables them to contract, and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated. In the case of *the New-York Firemen* *a* 2 Cowen's R. *Insurance Company against Sturges,* [a] it was ruled, that 664. "a corporation having no power by the act of incorporation to discount notes, but created for the purposes of insurance, has no right to carry on the business of discounting; that a corporation has no powers except such as are specially granted, and those that are necessary to carry into effect the powers so granted."

The authorities referred to, shew conclusively to my mind, that no corporation can legally exercise banking privileges, unless the power be specially granted. Then it is material to examine whether there is either an express or implied grant of banking powers or privileges contained in this charter. In the decision already re-*b* 15 John. R. 358 ferred to, [b] several well established rules of construction are recognized and enforced. They are, that where the words of a statute are obscure or doubtful, the intention of the Legislature is to be resorted to in order to discover their meaning : that a thing within the intention, is as much within the statute as if it were within the letter; and a thing within the letter is not within the statute, if contrary to the intention of it; that such a construction ought to be given, as will not suffer the statute to be eluded ; and that a statute, restraining any person from doing certain acts, applies equally to corporations or bodies politic, although not mentioned.

The charter in question, appears to be one *sui generis;* it is difficult to interpret its object. Evidently, however, it confers no *express* grant of powers in which society is interested, or which individuals are incapable of exercising, except the perpetuity which is incident to all corporations. It is true, authority was granted by this charter to the persons therein named, their associates and successors, to purchase and hold lands, goods, &c. and to dispose of the same ; to sue and be sued, to have and to use a common seal ; and also to ordain, establish and enforce bye-laws and ordinances, which are not repugnant to their own constitution or the laws of the land ; and generally, to do all acts which are incident to bodies corporate, un-

JANUARY 1828.

The State
v.
Stebbins, et al.

der the restrictions therein mentioned. Through the entire grant of powers, there is not to be found the slightest intimation of any important object to be effected, or enterprise to be pursued, for which a corporate capacity was necessary. If any thing contained in the charter would justify an interpretation of the object of the grant, it can be no other than the name and style of the company. It is entitled "The St Stephen's Steamboat Company;" had it been the St Stephen's Banking Company, it could have been argued with more plausibility, that banking powers and immunities were in the contemplation of the Legislature. And as the intention of the Legislature must govern the construction of all statutes, if it were necessary to ascertain the chief object of this grant, in the absence of any other indication of it, I should not hesitate to say from the title merely, that it had reference to the erection or ownership, and profits of steamboats, and such incidental privileges as were deemed necessary to a full and lucrative prosecution of the enterprise. This interpretation is resisted, and it is contended for the defendants, that the style of the corporation can afford no aid in the interpretation of the charter. If so, what are the consequences? If it confers no *steamboat privileges*, it evidently confers no *banking powers*. If it contains no grant of any specific powers or privileges which can be reasonably regarded as the object of the incorporation, under the axiom that corporations can only exercise such powers as are conferred by the charters of their creation, the consequence is, that the charter in question is nothing better than a dead letter. But as far as this case is concerned, it is only material to decide whether this charter contains any grant of banking privileges.

I do not understand it to be contended that any word, clause or sentence in it expresses banking powers or privileges. The supposed right must rest alone on the argument, " that this act created a corporation and gave to the company the powers incident to such;" that at the time of the grant, banking being a common law right, inasmuch as no statute had at that time, restrained the right, the power was incidentally and irrevocably granted. If we could imagine that the Legislature had no specific object in view for the grant, but intended to create a corporation with general powers, to pursue any and every enterprise that their ingenuity could invent, I think I

JANUARY 1828.

The State
v.
Stebbins, et al.

have sufficiently shewn from principles of well establish-ed law, that the charter would be void for the want of a specific grant. But the case does not rest here. I think there can be no difficulty in shewing that no banking privileges were intended to be given. If the power can be exercised under this act, one dozen or more banking companies may spring up from the several towns and villages in the State, to which acts of incorporation have been granted, in each of which will be found no less allusion to banking than is in this act. But has this or any adjacent State or Territory, (while many bank charters have been granted within them,) at any time during their history, granted a bank charter without expressing the object, or prescribing any rules for its government, and without locating the institution or requiring any capital whatever? The same Legislature at the same session, granted the charter establishing the Tombeckbee Bank in the town of St Stephens; the same town in which the steamboat corporation was to exist, if by construction from its title or otherwise, we can give it any locality. In the Tombeckbee Bank charter, among a variety of other restraints and limitations, the *maximum* capital was limited; the rules for raising it were particularly prescribed, as also the proportion to be observed between the amount of bills emitted, and the capital actually paid in; and the minimum capital in *specie* was stipulated, on which the operations could commence. Provision was therein contained, subjecting the stockholders to individual responsibility for their proportion of the debts, and the directors in like manner, for excess of emissions. It prescribed remedies for and against the bank; directed when dividends should be declared, and limited the duration of the corporation; and in almost every section, the object is clearly expressed. In this charter, nothing of a kindred nature to any of these restraints is to be found. If other proof was necessary that banking powers were not contemplated in the steamboat charter, the fact that it has no limitation of time, would supply the deficiency.

Whether banking power was or was not a franchise in this State when this charter was granted, does not. it is conceived, influence this question. Admitting it was not, as contended in behalf of the defendants, yet the State retained the power of constituting it one at pleasure, in re-

lation to all persons, associations or corporations, to which the power had not been expressly granted, if indeed the latter could otherwise exercise it.   The constitution made it a franchise, after the passage of this charter, but many years before the project of banking under it commenced, or was perhaps invented.   The constitution, bye-laws or regulations of the corporation, could not be regarded with reference to banking powers, if they were known, because they have not been adopted or sanctioned by competent authority; but inasmuch as they are not before us, they cannot be noticed.

But it is further contended that the act recited under which this indictment was preferred, admits that the act of incorporation gave the power, " as it would seem, by construction," to use banking privileges; and if so, the Legislature cannot abridge that power.   It is admitted by the Court, that when any legal charter has conferred banking or other powers, the Legislature is incompetent to repeal or abridge them, during the validity of the grant; but it is equally clear, that an admission by the Legislature, that a corporation once had a power, which was never granted, and which in truth they never had, cannot confer such power.   A recognition by statute of such a right, as having previously existed, and to be exercised in future, might give it a legal existence, but then it could only date its legitimacy from the time of the recognition.   Here, in the same sentence which contains the admission, is an express repeal of the assumed constructive privilege.

If, however, banking as common law privilege could, without grant, as is contended, be exercised by this corporation in common with individuals, it also, in common with individuals, must remain subject to legislative restraints, as far as such rights are concerned.   With this view, and to that extent only, if at all, can this repeal be regarded as material.

Whether the non user of a right for seven or eight years, which had once been sufficiently granted to a corporation, would, as contended on the part of the State, operate as a forfeiture, is not material on this occasion, to be considered.

The constitution of the State, by any liberal construction, denies banking privileges generally, and even by legislative authority, unless under severe restraints and

JANUARY 1828.  limitations ; and it would be a novel doctrine to allow to
a corporation under mere common law authority, rights
The State   which the supreme power of the State cannot exercise.
v,
Stebbins, et al.  That since the adoption of the constitution, banking in
this State is to be regarded as a franchise ; that to regu-
late and limit the issuing of any circulating currency in a
State, except under previous authority, is at all times one
of the prerogatives of sovereignty ; and that the passage
of the act of 1827, under which this prosecution was in-
stituted, was a legitimate exercise of sovereignty, are
propositions, the force of which we are constrained to
admit.

But it is also contended by the counsel for the defendants,
that as those persons acted in a corporate capacity, which
is invisible and untangible, they cannot be subjected to
criminal animadversion.    To this it is considered a suffi-
cient reply, that these defendants are indicted in their in-
dividual capacity ; that the act of incorporation can af-
ford no protection beyond the sphere of its legitimate
power.    The special verdict finds that all these defen-
dants by name, participated in the issuance of the pro-
hibited note ; and to admit that the individuals compos-
ing a corporation, are exempt from the restraints of crimi-
nal law, would be subversive of all sovereignty.

The Court are unanimous in the opinion, that the con-
viction is legal, and that the judgement must be affirmed.