# Ex Parte JAMES T. BURNETT.

[APPLICATION FOR HABEAS CORPUS.]

1. *When application may be made to supreme court.*—A person in confinement for the violation of a municipal ordinance, whose application for a discharge on *habeas corpus* has been refused by a probate judge, may apply directly to the supreme court for relief, without first making application to a circuit judge or chancellor.

2. *What questions may be investigated on petition for habeas corpus.*—On the return of a writ of *habeas corpus*, no court or judge has authority (Code, § 3741) to inquire into the legality, justice, or propriety of the judgment or order under which the prisoner is confined, except on the grounds specified in section 3744 as authorizing a discharge.

3. *General powers of municipal corporations.*—A municipal corporation must act within the limits of its delegated powers, but may pass all laws necessary or proper to carry into effect a given power.

4. *Powers of corporate authorities of Cahaba to fine and imprison.*—Under the 6th and 8th sections of the act incorporating the town of Cahaba, (Toulmin's Digest, 817,) each member of the town council has power and authority as a magistrate within the corporate limits of the town, to impose fines, not exceeding $50, and to imprison for not more than three days, for the violation of a municipal ordinance; but, before the power to imprison can be exercised, there must have been a judicial ascertainment of the fact that such ordinance has been violated.

5. *Validity of by-law respecting retailing of spirituous liquors.*—A by-law, fixing the price of a town license for retailing spirituous liquors at $1,000, is in its nature prohibitory, and is not authorized by any express or implied grant of power to said municipal authorities; and the fact that one retailer, submitting to the terms of such ordinance, has done a prosperous business, does not affect the nature of the ordinance.

APPLICATION by James T. Burnett for *habeas corpus*, or other remedial writ, to obtain his discharge from imprisonment in the county jail of Dallas, for an alleged violation of a municipal ordinance passed· by the corporate authorities of the town of Cahaba, fixing the price of a license for retailing spirituous liquors within the corporate limits of said town at $1,000, and prescribing a penalty of $50 per day for a violation of it. The petitioner was charged with forty different violations of this ordinance; was fined $20 in each case, and sentenced to imprisonment for three days unless the fines were paid.

An application for a discharge was first made to the probate judge of said county, and was by him refused.

GEO. W. GAYLE, for the petitioner.—1. The jurisdiction of this court, in proceedings like the present, is founded on constitutional provisions.—Const. of Ala., art. V, § 2. The manner in which the application is made conforms to the practice settled in *Ex parte* Croom & May, 19 Ala. 561. The jurisdiction of the probate judge being concurrent with that of a circuit judge or chancellor, neither of the latter officers could revise the decision of the former; consequently, it was not necessary that application should be made to either of them.

2. Sections 3741 and 3744 of the Code, being *in pari materia*, are to be construed together, as parts of one statute. Thus construed, the former section does not apply to the cases specified in the latter.

3. The municipal ordinance which the petitioner is charged with having violated, being unreasonable, prohibitory in its nature, repugnant to the State laws on the subject of retailing, and unauthorized by any grant of power contained in the town charter, is void.—Angell & Ames on Corporations, §§ 347, 357, 360, 363; Wilcox on Corporations, § 381; Yuille's case, 3 Ala. 139; Beroujohn's case, 27 Ala. 58; 4 Peters, 152; 5 Cowen, 462; Harris v. Intendant of Livingston, 28 Ala. 577.

4. Though the ordinance be held valid, the penalty prescribed for its violation is unreasonable and void.

5. If the penalty prescribed be valid, it did not authorize the fine assessed against the prisoner.

6. The ordinance does not authorize the imposition of both fine and imprisonment.

7. There must have been a judicial ascertainment of the alleged offense and penalty, before the party could be legally imprisoned.

ALEX. WHITE, PEGUES & DAWSON, and D. S. TROY, *contra.*— 1. The petitioner has an appropriate remedy, by *certiorari* or appeal to the circuit court, or by an action for false imprisonment.—Chandler v. Town Council of Marion,

6 Ala. 899; Carroll & Beal v. Mayor of Tuskaloosa, 12 Ala. 174; Mayor of Mobile v. Rouse, 8 Ala. 515; State v. Eubank, 6 Ala. 654; Angell & Ames on Corporations, § 360. Consequently, this court will not take jurisdiction.

2. The legality or justice of the order, under which the prisoner is in confinement, cannot be inquired into by this court.—Code, § 3741.

3. The ordinance which was violated by the prisoner, is authorized by the charter of the town, and is not obnoxious to any of the objections urged against it.— Town Council of Marion v. Chandler, 6 Ala. 899; Carroll & Beal v. Mayor of Tuskaloosa, 12 Ala. 174; Mayor of Mobile v. Rouse, 8 Ala. 515; 7 Cowen, 606; 12 Wheaton, 19; 8 Foster, 176; 4 Denio, 341; 3 Barbour, 548.

4. The power to imprison is expressly conferred by the charter, and is valid.—Angell & Ames, 302, § 8; 5 Co. Rep. 63; 1 Salkeld, 349.

STONE, J.—The jurisdiction of chancellors, circuit judges, and judges of probate, over writs of *habeas corpus*, is concurrent in all cases, except when the applicant is "confined in the county jail, or other place, on a charge of, or commitment for felony, or on a sentence or decree of the supreme court, court of chancery, or circuit court." Code, § 3710.

This concurrence of jurisdiction does not extend beyond the limits of the county in which the judge of probate holds his office. It being then shown that, so far as judicial functions were invoked in this case, neither a chancellor nor a circuit judge had larger powers than the judge of probate, we know of no principle of law which requires that the petitioner, after failing in his application to the judge of probate, shall go for redress to either of those judicial officers, or the courts over which they preside, before coming to this court, and asking our *superintendence* and *control* of that inferior jurisdiction.— Const. of Ala., art. V, § 2.

It is settled in this State, that a party who has made an unsuccessful application to a circuit judge, for enlargement on *habeas corpus*, may come into this court, and here have the

action of the primary court revised.—*Ex parte* Croom & May, 19 Ala. 561; *Ex parte* Simonton, 9 Por. 383. When the application has been made to a probate judge, in cases within his jurisdiction, the law gives the same right as if the first application had been to the circuit judge.

It has been argued before us, that, in this proceeding, we have no authority to inquire into the *legality, justice,* or *propriety* of the *order, judgment,* or *commitment,* of which the petitioner complains. Section 3741 of the Code is relied on in support of this position. Section 3744 also bears directly on this question, and we feel bound so to construe them, as to reconcile their apparently conflicting provisions. Looking alone at the provisions of those two sections, which (it may be thought) conflict, section 3741 declares, that "no court, chancellor, or judge, on the return of a writ of *habeas corpus,* has the authority to inquire into the legality or justice of any order, judgment, decree or process of any court legally constituted." Section 3744: "If it appears that the party is in custody by virtue of process from any court legally constituted, or issued by any officer in the course of judicial proceedings before him authorized by law, such party can only be discharged in one of the following cases," &c. We hold, that these two sections must be construed together, and that the prohibitory clauses in section 3741, relate to questions of *legality, justice* and *propriety, other* and *different* from those mentioned in the subdivisions of section 3744.

It is contended, that the petitioner ought to be discharged in this case,—1st, because the corporate authorities of Cahaba had no authority under their act of incorporation to adjudge the alleged fine against him; 2dly, that they had no authority to imprison petitioner; 3dly, that they had no authority, under the act of incorporation, to require the payment of a thousand dollars as the price of a license to retail spirituous liquors within the corporate limits of Cahaba, and that the ordinance, providing penalties for retailing without such license, was also void for defect of authority. All these questions must depend upon a proper construction of the act incorporating the town of Cahaba.—Toulmin's Digest, 817.

In the case of the Mayor and Aldermen of Mobile v. Allaire, this court quoted with approbation the language that "a municipal corporation must act within the limits of its delegated authority, and cannot go beyond it." "Such a corporation," this court adds, "has power to pass all laws necessary or proper to carry into effect any given power."—14 Ala. 400; Mayor of Baltimore v. Hughes, 1 Gill & Johns. 480. The following authorities fully sustain the principle stated: Bergen v. Clarkson, 1 Halst. 352; Beatty v. Lessee of Knowler, 4 Pet. 152; Kirk v. Nowill, 1 T. R. 118; Heise v. Town Council of Columbia, 6 Rich. 404–14; Corporation of Columbia v. Hunt, 5 Rich. 550; City of Rochester v. Collins, 12 Barb. Sup. Ct. Rep. 559; Riley v. City of Rochester, 13 Barb. Sup. Ct. Rep. 324; Nichol v. Mayor, &c., 9 Humph. 252; Sharp v. Spier, 4 Hill, 76; Hodges v. City of Buffalo, 2 Denio, 110; Stetson v. Kempton, 13 Mass. 272; Intendant of Norton v. Intendant of Mansfield, 16 Mass. 48; Ang. & Ames on Corp. 200; Head v. Prov. Ins. Co., 2 Cranch, 127; New York Firemen's Ins. Co. v. Mechanics' Fire Ins. Co., 7 Wend. 31; Jackson v. Hartwell, 8 Johns. 422; State v. Stebbins, 1 Stew. 229; Smith v. Ala. Life Ins. & Trust Co., 4 Ala. 558; Dartmouth College v. Woodward, 4 Wheat. 636; The State v. Mayor of Mobile, 5 Por. 279.

The 5th section of the act incorporating Cahaba confers on the town council power to "affix fines for offenses against their by-laws, not exceeding fifty dollars for every such offense, to be recovered before any magistrate." The 6th section declares, "that the intendant, and each and every one of the council, *ex officio*, shall be vested with all the powers and authorities that justices of the peace are vested with by the laws of this State, and shall and may exercise the same within the limits of said town, under the same penalties and restrictions to which justices of the peace of this State are and shall be subject and liable."

Our legislative history, up to the time when Cahaba was incorporated, Dec. 3, 1819, creates no such judicial officer as a magistrate. Consulting the law dictionary, we find the term *magistrate*, in the sense in which the context

shows the legislature intended to be understood in this statute, denotes *an inferior judicial officer, as a justice of the peace.* We think we carry out the intention of the legislature, when we hold that the *powers* and *authorities* conferred on the *intendant and each and every one of the council,* under the provisions of the 6th section, copied above, created each of them a magistrate within the limits of said town, and authorizes each of them to adjudge the fines, not exceeding fifty dollars, which the town council may by their by-laws affix.

The 8th section of the act we are considering provides, "that the said town council shall have full power and authority, from time to time, to commit to close prison in the jail of Dallas county, for any time not exceeding three days, all such person or persons who shall incur any penalty and forfeitures, intended to be inflicted by any of the by-laws of said corporation passed conformable to the powers vested in them by this act." The meaning of this language is plain. Under it, the town council are authorized to imprison any and all persons who incur penalties and forfeitures under their by-laws. Before this power could be exercised, however, there must have been an appropriate by-law, and a trial and judicial ascertainment that such by-law had been violated. If the by-law imposed for its violation a money fine, such fine must have been adjudged before the authority provided by the 5th section. If the terms of a legally enacted by-law justified it, the council had full authority to impose imprisonment, not exceeding three days, as an additional punishment to the money fine, or to inflict imprisonment as a sole punishment.

The consideration of the remaining question imposes on us the duty of construing the grants of power contained in the charter, that we may determine whether the power claimed has been expressly conferred on the town council; or, if not expressly conferred, is its exercise necessary and proper as a means of making effectual the delegated powers.

The only express grants of power found in the act of

incorporation, in additon to those above stated, and material to this inquiry, are the following:

Section 5. "They [the town council of Cahaba] shall have full power and authority to make and establish all such rules, by-laws, and ordinances, respecting the streets, markets, buildings, carriages, wagons, carts, drays, and police of said town, that shall appear to them requisite and necessary for the security, welfare, and convenience of said town, or for preserving health, peace, order, and good government within the same."

Section 11. "The said town council shall have and exercise the privileges of granting licenses for retailing of spiritnous and other liquors, and for keeping billiard tables in the said town of Cahaba."

Leaving out of view all the provisions of section 5, that do not bear on this question, we may state the pertinent provisions thus: *The town council are authorized to make all such rules, by-laws, and ordinances, respecting the police of said town, as shall appear to them requisite and necessary for the security, welfare, and convenience of said town, or for preserving health, peace, order and good government within the same.*

Much contrariety of opinion may, and probably does, exist in the public mind, on the moral questions growing out of the traffic in ardent spirits. With those questions we have nothing to do, further than to declare what the law is—not what it *should be ;* that belongs to another department of the government.—Con. of Ala., art. II, § 1; *Ib.*, art. III, § 1.

The case of the Intendant and Council of the town of Marion v. Chandler, 6 Ala. 899, presented a question, in many respects, strikingly analagous to the one now before us. In that case, the town council had raised the price of a license to retail, to the sum of one thousand dollars. This court held, that "the object of the corporation, in requiring retailers to pay for a license a sum so much beyond what the legislature have required by the general law upon the subject, was, doubtless, to prohibit the business of retailing within the limits in which its legislation operates;" and they therefore considered the ordinance as prohibitory.

In the case of Harris v. The Intendant and Council of Livingston, 28 Ala. 577, we quoted the above principle without dissent. In that case, we also held, that the term *retailing*, found in the act incorporating the town of Livingston, must be construed in the sense given to it in our long continued legislation upon the subject. Reinvestigating the grounds of that opinion, we are fully satisfied with the rule there laid down.

Applying that rule to the case before us, were the town council of Cahaba clothed with the authority they exercised ? Our legislation on the subject of licenses to retail, previous to December 3d, 1819, blended the business of tavern keeping with that of retailing, and treated them as one occupation.—Toul. Digest, 727 to 733. The price of a license to keep tavern at that time, was, in the towns $20, and in the country $10. Nothing can be gleaned from our statutes tending to prove that the traffic in ardent spirits, save in a few excepted instances, was considered by the legislature as detrimental to the *security, welfare*, or *convenience* of society ; that it endangered *health, peace, order or good government ;"* or that this species of commerce could be regarded as a proper subject of *police* regulation. On the contrary, the sale of wines and other liquors was impliedly sanctioned by the act approved December 27, 1815, which prohibited, under a penalty, the sale of "adulterated or unwholesome wines or spirituous liquors."—Toul. Digest, 690.

A further reason in favor of the proposition that the general law does not authorize us to regard the sale of ardent or vinous liquors as *malum in se,* or a proper subject of police regulation, unless the liquors themselves be adulterated or unwholesome, may be found in the fact that such traffic has always been regarded as a legitimate source of revenue.

We hold, then, that the town council of Cahaba were not authorized by the 5th section of the act of incorporation to fix the price of a town license to retail at one thousand dollars.

Neither does the 11th section confer the power. That section only authorizes the granting of license. The

power to grant certainly implies the power to withhold, or, in other words, the right to abstain from the exercise of the power. It does not confer the right to prohibit the sale of ardent spirits.

We do not, in this opinion, intend to lay down a rule which will deny to the legislature the power to confer on corporations the right to prohibit the sale of ardent spirits by retail. In the cases of Intendant and Council of Marion v. Chandler, and Harris v. Intendant and Council of Livingston, *supra*, the right was conferred, and we held that, in such cases, the corporation might enact a prohibitory ordinance. All we decide is, that the price of a license demanded in this case—one thousand dollars—is in its nature prohibitory; that such sum is so disproportionate to the cost of a license to retail under the general law, that it cannot be vindicated as one of the incidental powers of municipal corporations; and that the town council of Cahaba were not authorized by any express grant of power to exercise the power which they assumed to exercise in this case.

Neither is it our purpose to limit the price of a corporation license to the sum fixed by the general law on a license to retail. As one of the incidental powers of a corporation, the council may certainly transcend that limit, provided their ordinance is not its nature prohibitory.

The question in this case is not relieved of its embarrassments by the fact that, notwithstanding the price, one retailer has submitted to the terms of the ordinance, and has driven a prosperous business. The ordinance still remains *in its nature* prohibitory.

Without pursuing this subject, we are satisfied that the process under which the petitioner in the case at bar is undergoing imprisonment, "though [possibly] in proper form, has been issued in a case, [and] under circumstances not allowed by law." Code, § 3744, subd. 4. It results from this that the petitioner is illegally restrained of his liberty, and should have been discharged by the judge of the probate court of Dallas.

The writ of *habeas corpus*, as prayed for, is ordered to issue, "unless the counsel engaged are satisfied that no

new phase would be presented by the return, and are content to apply to the judge below for the relief they seek, as hereby indicated."

NOTE BY REPORTER.—On a petition for rehearing being submitted by the counsel for the corporate authorities, the following opinion was delivered:

*Per Curiam.*—The want of authority, on the part of the corporate authorities, to demand one thousand dollars as the price of a license, invalidates the ordinance which prescribes a penalty for retailing without such license. Before the corporate authorities can complain that a supposed offender has retailed without a license, they must provide some *legal* mode by which a retailer may obtain a license. To hold otherwise, would be to authorize them to prohibit the traffic altogether.

The petition for rehearing has been fully considered, and is overruled.