76 ALABAMA.

City Council of Montgomery v. Montgomery & Wetumpka Plank-Road Co.

# CITY COUNCIL OF MONTGOMERY *vs.* MONT-GOMERY & WETUMPKA PLANK-ROAD CO.

[ACTION BY MUNICIPAL CORPORATION ON PENAL BOND.]

1. *General powers of corporations.*—A corporation, public or private, can only exercise such powers as are expressly conferred by its charter, and such as are necessary and proper to carry into effect its granted powers ; and when a corporation is created for a specific purpose, it has an implied power to use the necessary and usual means to effect that purpose.

2. *Power of corporate authorities of Montgomery to aid in construction of plank-roads.* The 14th section of the charter of the city of Montgomery, conferring on the corporate authorities power and authority to enact such laws and regulations as may be deemed necessary, "in relation to the streets and highways, public buildings and powder-magazine, and every other matter and thing which they may deem necessary for the good order and welfare of said city," does not authorize them to construct or aid in constructing a plank-road or bridge beyond the corporate limits of said city ; nor is the exercise of such power a necessary means of effecting the purpose for which said corporation was created, or necessary to carry into effect any of the powers expressly granted ; consequently, the loan of the city bonds to the Montgomery and Wetumpka Plank-Road Company, so far as relates to the building of a bridge across the Tallapoosa river and the construction of said plank-road beyond the limits of the city, was unauthorized and void.

3. *Sufficiency of complaint.*—Where the complaint alleges a loan of city bonds to a private corporation, it is not necessary to aver that the corporation received the proceeds of said bonds : if the bonds were in such condition that they could not be made available, this is matter of defense, to be presented by a proper plea.

4. *Validity of bond taken by municipal corporation without authority under charter.* A penal bond, taken by a municipal corporation from an incorporated plank-road company, and conditioned for the faithful application by said plank-road company of certain city bonds, loaned by said municipal corporation, without authority under its charter, to aid in the construction of a bridge and plank-road, and for the completion of said bridge and road by a specified day,—is invalid, and cannot be enforced by suit ; nor is its validity affected by a subsequent sale or transfer of the city bonds by the plank-road company.

5. *Judicial notice of rivers and towns.*—The courts of this State judicially know that no part of the Tallapoosa river lies within the corporate limits of the city of Montgomery.

6. *Judicial notice of charter of corporation.*—Judicial notice cannot be taken of the charter of an incorporated plank-road company, which is a private corporation.

7. *Bond partly void, and partly valid.*—A penal bond, taken by a municipal corporation, and conditioned for the faithful performance by the principal

City Council of Montgomery v. Montgomery & Wetumpka Plank-Road Co.

obligor of certain public works, some of which said corporation had no authority under its charter to construct or aid in constructing, is valid as to that portion of the works which the corporation had authority to con struct, though invalid as to the residue.

8. *Estoppel against party contracting with corporation from alleging invalidity of contract.*—A party who contracts with a municipal corporation for the perform ance of works which the corporation has no authority to construct, and who has received the benefit of his contract, is not estopped, when sued by the corporation, from setting up its want of authority to make the contract.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by the appellant, and was founded on a penal bond, dated in June, 1852, and signed by James F. Winter, as president, in behalf of the Montgomery and Wetumpka Plank-Road Company, as principal, together with John G. Winter and others as sureties; which bond was conditioned as follows: "Whereas the said city council of Montgomery hath loaned to the said Montgomery and Wetumpka Plank-Road Company bonds of the city of Montgomery to the amount of $20,000, to be used by said company in the completion of said road, and in the building of a bridge across the Tallapoosa river: Now, therefore, the condition of this bond or obligation is such, that if the funds arising from said bonds shall be faithfully applied by said Montgomery and Wetumpka Plank-Road Company to the completion of their said road and the building of a bridge over the Tallapoosa river, and if the said road and bridge shall be completed by the 1st day of March, 1853, then this obligation shall be null and void," &c.

The following breaches were assigned in the complaint:

"1. That the funds arising from the said bonds, loaned by plaintiff to said plank-road company, to be used by said company in the completion of said road, and in the building of a bridge across the Tallapoosa river, were not faithfully applied by said plank-road company to the completion of said road and the building of said bridge; but it wholly failed and neglected so to do, and still fails and neglects so to do."

"2. That said defendants did not and would not com-

plete the said road and bridge by the 1st day of March, 1853, but wholly failed and neglected so to do."

"3. That said plank-road company did not complete said road and bridge by the 1st day of March, 1853, but wholly failed and neglected, and still fails and neglects to do so."

"4. That the funds arising from said bonds, so loaned as aforesaid, were not faithfully applied by said plank-road company to the completion of said road and the building of said bridge; and that said company did not complete its said road, nor build said bridge over the Tallapoosa river, by the 1st day of March, 1853, but wholly failed and neglected so to do, and still fails and neglects to do so."

The defendants craved oyer of the bond and condition, and demurred to the complaint; assigning the following causes of demurrer: 1st, "that said bond and cause of action are founded upon, arise out of, and were delivered, as appears on the face thereof, on an illegal consideration"; 2d, "that said bond was executed and delivered on a consideration which was given in violation of plaintiff's charter, and is void"; 3d, "that the consideration of said bond was illegal, because plaintiff had no power or authority by its charter to issue and loan its bonds as set forth in the condition of the bond declared on, and the same are therefore void, and constitute no consideration for the bond declared on"; 4th, "that the complaint does not aver that said plank-road company ever received the proceeds of said bonds, or any of them"; and, 5th, "that the contract, as shown in the complaint, is too uncertain and indefinite to furnish a measure of damages that would sustain an action."

The court sustained this demurrer, and its judgment thereon is now assigned as error.

JAMES E. BELSER, with whom were FAIR & WHATLEY, for the appellant.—1. The appellant is a public municipal corporation, having authority under its charter to do anything which is reasonable and proper for the advancement of the public welfare. The grant contained in its

JUNE TERM, 1857. 79

City Council of Montgomery v. Montgomery & Wetumpka Plank-Road Co.

charter is equivalent to legislative power. The charter is silent as to what contracts the city may make, or how it is to act for the public welfare ; hence, it may enter into such agreements as are beneficial to the public interests. It may borrow money, execute and dispose of its bonds, aid in the construction of public works outside of its territorial limits, or do any other act which, in the opinion of the corporate authorities, may be deemed necessary for the welfare of the city, or advantageous to its interests. In support of these positions, see the following authorities : 6 Yerger, 499 ; 6 Humph. 519 ; 2 Hill's (N. Y.) R. 439 ; 9 Paige, 470 ; 1 Sandf. Ch. 280 ; 1 Sandf. S. C. 53 ; 7 Ohio, 354 ; 1 Watts, 385 ; 13 Barbour, 324 ; 9 Humph. 269 ; 6 Pick. 427 ; 11 Vermont, 402 ; 5 Gill & John. 424 ; 5 Hill, 137 ; 15 John. 44 ; 5 Barr, 345 ; 4 Comstock, 464 ; 12 Barbour, 28 ; 1 Cowen, 514 ; 11 Serg. & R. 411 ; 1 Rhode Island R. 312 ; 5 How. (U. S.) R. 83 ; 7 Serg. & R. 343 ; 12 Geo. 23 ; 13 Penn. 13 ; 1 Randolph, 76 ; 3 Randolph, 142 ; Angell & Ames on Corporations, 288.

2. Although the contract may be unauthorized by the plaintiff's charter, the defendants cannot take advantage of the invalidity of the contract, after having received and enjoyed its benefits.—2 Ala. 451 ; 5 Ala. 256 ; 8 Ala. 828 ; 14 Penn. 83 ; 7 Ohio, 357 ; 8 Sm. & Mar. 173 ; 1 Rich. 283 ; 6 Hill, 37 ; 5 B. Monroe, 130 ; 16 Mass. 94 ; 2 Kelly, 92 ; 7 Metcalf, 275 ; 3 Randolph, 136 ; 8 Wheaton, 388 ; 2 Litt. 300 ; 3 Randolph, 136 ; 4 Comstock, 464.

N. W. COCKE, and JNO. A. ELMORE, with whom were WATTS, JUDGE & JACKSON, contra.—1. The powers of a municipal corporation, in common with all delegated political powers, are to be strictly construed.—Nichol v. Mayor of Nashville, 9 Humph. 262 ; Halstead v. Mayor of New York, 3 Comstock, 430 ; Hodges v. City of Buffalo, 2 Denio, 110 ; 2 Selden, 92 ; 4 Hill, 76 ; 12 Barbour, 559 ; 22 Conn. 552 ; 1 Sneed, 698 ; 1 Bay, 383 ; 1 Hill, (S. C.) 55. A corporation, created by statute, has no other powers than such as are specifically granted, or such as are necessary to carry the granted powers into effect ; and its general powers are restricted by the nature

and objects of its institution.—Angell & Ames on Corpo-
rations, § 111; Beaty v. Lessee of Knowler, 4 Peters,
152; Ohio v. Wash. Lib. Co., 11 Ohio, 96; Barry v. Mer.
Ex. Co., 1 Sandf. Ch. 280; Fire Ins. Co. v. Ely, 5 Conn.
560; S. C., 2 Cowen, 699; People v. Utica Ins. Co.,
15 Johns. 383. It can make no contract which is not
necessary, directly or indirectly, to enable it to answer
the purpose of its creation; nor can it apply its funds to
any purpose which is not within the legitimate purposes
for which it was created.—Angell & Ames, § 256; 2 Denio,
110; 22 Conn. 552; 7 Eng. Law & Eq. R. 505; 10 Bea-
van, 1. If it exercise powers foreign to the purpose of its
creation, its acts are void.—3 B. & Ald. 12; 1 McLean,
43; 4 Ala. 558, and other authorities *supra.*

2. The provision contained in the 14th section of the
appellant's charter, authorizing the corporate authorities
to pass laws relative to the streets, highways, &c., "and
every other matter and thing which they may deem
necessary for the good order and welfare of said city,"
does not confer the power claimed and exercised in the
making of the contract here sued on. The grant of these
general powers is restricted by the nature and object of
the creation of the corporation. The word *welfare,* in its
ordinary and familiar signification as applicable to States,
is defined by Webster to be, "exemption from any un-
usual evil or calamity; the enjoyment of peace and pros-
perity, or the ordinary blessings of society and civil
government." In the connection in which the word is
here used, it was intended to refer to matters involving
the public safety. The construction for which the appel-
lant contends could not have entered into the contempla-
tion of the legislature by which the charter was granted,
for subscriptions by municipal corporations in aid of plank-
road companies, or other works of internal improvement
beyond the corporate limits, were then unheard of. Since
such subscriptions have received public attention, the
common understanding of the country, and the history of
legislation on the subject, have indicated that the power
to make them requires a special grant of authority. In
this State, counties have never exercised the power to

apply the public funds to the construction of jails or court-houses, or to impose taxes for their erection, without a special act of the legislature; and the powers of the commissioners, in all matters of a public nature involving the expenditure of the county funds, have been strictly construed by the courts. The special act of 1846, authorizing the city council of Montgomery to issue what are known as the "State-house bonds," and the subsequent act of 1848, conferring power to pass ordinances to regulate the erection of wooden buildings, &c., are legislative interpretations of the original charter, which were supererogatory under the construction of that charter for which the appellant contends. A provision, very similar in its terms to that contained in the 14th section of this charter, was construed in Beaty v. Lessee of Knowler, 4 Peters, 171, and held not to confer unlimited powers. To the same effect are the cases above cited, from 10 Beavan, 1; 3 B. & Ald. 11; 8 Gill & John. 248; 1 Md. Ch. Dec. 542; 1 Sneed, 698; 13 Mass. 272.

8. The power here claimed cannot be deduced from the purpose and object of the appellant's corporate creation. The purpose for which a municipal corporation is created is not clearly defined. In Nichol v. Mayor of Nashville, 9 Humph. 268, it is said: "A direct corporate purpose might be styled to be one which, in its direct and immediate consequences, operates upon the interests of the corporation. Such would be all police regulations for the government of the town, the promotion of good order, the protection of its citizens from the lawless, the suppression of vice, the opening and preservation of streets, highways and alleys, the erection of market-houses and hospitals, supplying the town with water, &c." These and similar matters are doubtless within the legitimate purposes for which such a corporation is created. But the promotion of the commercial or pecuniary prosperity of a city or its citizens, it is confidently insisted, is not itself a *purpose* for which such corporation is created; on the contrary, this is a mere *incident*, or *consequence*, flowing from the exercise of the powers within the purpose of its creation. If the individual members of such corporation

are secured the blessings of good order, health, and security in their persons and property, their commercial or pecuniary prosperity follows as a consequence. The claim of power, then, to aid in a work of internal improvement, because it will advance the commercial or pecuniary prosperity of the city or its citizens, cannot be sustained.

4. The defendants are not estopped from setting up the want of authority on the part of the corporation, by the fact that they have received the consideration. All estoppels are mutual; and if one party is bound, both are. This doctrine would, in effect, destroy all restrictions on the powers of corporations.—Angell & Ames, § 256; Gage v. New Market Railway Co., 14 Law & Eq. R. 57; Albert v. Savings Bank of Baltimore, 1 Md. Ch. 407; Ohio Life Ins. & Trust Co. v. Mer. Ins. & Trust Co., 11 Humph. 1. Of all the cases cited by appellant's counsel to this point, that from 6th Hill, 33, is the only one which sustains it; and it is not well considered, and is unsuported by argument or authority. In all the other cases, the question was in reference to an abuse of an express power, and not whether a particular power was given; abuses of power which amounted to a violation of the charter, for which the only remedy was in the State.

STONE, J.—The authority of the city council of Montgomery, to make the contract sued on in this case, is claimed under the 14th section of its charter, which reads as follows:

"The said city council of Montgomery shall have full power and authority to make, ordain and enact such laws and regulations, (not contrary to the constitution and laws of this State,) as may be deemed necessary in relation to the streets and highways, public buildings and powder magazine, and *every other matter and thing which they may deem necessary for the good order and welfare of said city.*"

In section 1, it is declared, that the city council of Montgomery has authority "to do and perform any other acts incident to bodies corporate."

The act incorporating the city of Montgomery creates it a municipal corporation, and confers on it the usual

powers of such bodies. No power, except for a few specified objects, is conferred on its functionaries, which in its exercise looks beyond the limits of the city.

At an early day, Judge Saffold, speaking of the powers of corporations, employed the language, that "the act of incorporation is to them an enabling act. It gives them all the power they possess."—State v. Stebbins, 1 Stew. 299–308. The principles asserted in the case cited have become the settled rule of construction in this court.— State v. Mayor and Aldermen of Mobile, 5 Porter, 279 ; Mayor and Aldermen v. Allaire, 14 Ala. 400 ; *Ex parte* Burnett, 30 Ala. 461, and authorities cited.

In *Ex parte* Burnett, *supra*, we considered the question of the powers of corporations; and we there held, that such bodies can only exercise such powers as are expressly conferred on them, and such as are necessary and proper to carry into effect the granted powers. To these we may add, "the creation of a corporation, for a specified purpose, implies a power to use the necessary and usual means to effect that purpose."—Angell & Ames on Corporations, 200.

In the case last cited, we showed that the same rules for the determination of their powers prevailed both as to public and private corporations.—See that case, and the numerous authorities in support of these propositions.

Looking into the charter of the city of Montgomery and its amendments, we find no express authority to enter into the contract declared on; neither is the exercise of such power necessary to carry into effect any of the expressly granted powers ; nor was the exercise of the power under consideration a necessary means of effecting the purpose for which this corporation was created. The question then arises, do the general clauses, copied in the opening of this opinion, aid the appellant in this case ?

In the case of Beaty v. Lessee of Knowler, 4 Peters, 152–171, the supreme court of the United States held the following language : "The provision in the tenth section, that the 'directors shall have power to do whatever shall appear to them to be necessary and proper to be done for the well ordering of the interest of the proprietors, not

84 ALABAMA.

City Council of Montgomery v. Montgomery & Wetumpka Plank-Road Co.

contrary to the laws of the State,' was not intended to give unlimited power, but the exercise of a discretion within the scope of the authority conferred. If the words of this section are not to be restricted by the other provisions of the statute, but to be considered according to their literal import, they would vest in the directors a power over, the land, only limited by their discretion. They could dispose of the land, and vest the proceeds, in any manner which they might suppose would advance the interest of the proprietors. It is only necessary to state this consequence, to show the danger of such a construction." See, also, The People v. Utica Ins. Co., 15 Johns. 358, 383 ; Stetson v. Kempton, 13 Mass. 272, 278–9 ; State of Ohio v. Washington Social Library Co., 11 Ohio, 96; Angell & Ames on Corporations, 3d ed., 84–5–6.

The language found in the charter which was construed in the case of Beaty v. Lessee of Knowler, *supra*, strikingly resembles the clause from the act incorporating the city of Montgomery, which we are considering. ·The grant of power in the one case is, that "the *directors shall have power to do whatever shall appear to them to be necessary and proper to be done,*" *&c.* In the other, it embraces "*every other matter and thing which they may deem necessary for the good order and welfare of said city.*" In this case, as in the case from 4th Peters, *supra,* if the words of the charter "are not to be restricted by the other provisions of the statute, but to be considered according to their literal import, they would vest in the corporate authorities a power, * * * only limited by their discretion." We cannot believe it was the intention of the legislature to confer on the city council of Montgomery "unlimited power"; but only to grant to that body the right to exercise "a discretion within the scope of the authority conferred." In other words, we limit the words, "every other matter and thing," as found in the act, to such subjects as are cognate to the powers expressly conferred.

Arriving at these conclusions, it follows, that the city council of Montgomery had no authority to construct, or aid in constructing, a plank-road or bridge outside of the corporate limits of the city, unless such road or bridge

JUNE TERM, 1857. 85

City Council of Montgomery v. Montgomery & Wetumpka Plank-Road Co.

should become necessary to carry into effect some power expressly granted. No clause of the act of incorporation has been pointed out, to which this implied power would attach, and we have not been able to find such clause. Indeed, this argument has not been urged before us.

One of the causes assigned in the demurrer to the complaint, is, that it contains no averment "that the Montgomery and Wetumpka Plank-Road Company ever received the proceeds of said bonds or any of them." Both the complaint, and the bond declared on, show that the city council of Montgomery "*hath loaned*" to the plank-road company bonds to the amount of twenty thousand dollars. The plank-road company having received the bonds, if those bonds were in a condition that they could not be made available, the question should be presented by a proper plea. We cannot presume such to have been the case.

The demurrer also asserts, that the bond declared on was given upon an illegal consideration. What was the consideration of the bond? Evidently, twenty thousand dollars of the bonds of the city of Montgomery. We think it clear that there are purposes for which the city could issue its bonds. In fact, the act "to amend the charter of the city of Montgomery," approved February 2, 1856, expressly authorized the city council to raise a sum of money not exceeding seventy-five thousand dollars, by the sale of the bonds of said city for that amount. Neither the bond declared on in this case, nor any part of the pleadings in the cause, informs us that the bonds which were the subject of this loan were issued for a purpose not authorized by law. In the absence of all averment, showing that the bonds were *issued* for an unauthorized purpose, we cannot presume that the bond under discussion was given on an illegal consideration.

The legality of the issue of those bonds, and the liability of the city for their redemption; and, as affecting this last inquiry, the question whether the bonds are in the hands of first or subsequent holders,—will, perhaps, present grave questions, should they arise. None of them

are presented by this record, and it would be improper in us now to consider them.

But the demurrer raises another question : namely, the power of the city council to make the contract declared on, and to maintain an action for its breach. In our opinion, the latter inquiry is dependent on the former. In other words, we think it clear that, if the city council had no authority to have the work done which the bond requires the defendants to perform, no action can be maintained by the former for the breach of the contract. We base this, not on the want of consideration to support the contract; on the contrary, the same rule would prevail if the city had paid out gold and silver as the consideration for the bond. It rests on the naked want of authority in the city to have the work done; and this want of authority, if it exist, renders the bond invalid. We think these results flow inevitably from the principles above settled.

It may be contended that, although the bond declared on is invalid so long as the city bonds remain in the hands of the plank-road company, yet, when that company negotiates the bonds, and in this way, as it is contended, fixes a liability on the city for their redemption, then the consideration of the bond becomes complete, and a right of action upon it accrues to the city council. We confess our inability to perceive the force of this argument. The general rule is, that contracts depend for their validity on the facts of the case as they exist when it is entered into. With the exception of a few cases dependent on peculiar circumstances, we know of no rule by which a contract which is invalid at the time it is entered into can become binding by the happening of any subsequent event. At all events, we cannot admit that a subsequent sale of the city bonds by the plank-road company, can have the effect of supplying the want of power in the city authorities to make the contract.

The contract in this case purports to bind the obligors to apply the proceeds of the city bonds faithfully to the completion of the Montgomery and Wetumpka plank-road, and the building of a bridge over the Tallapoosa

river; the work to be completed by the first day of March, 1853. The breaches assigned are, that the road has not been completed, and the bridge has not been built. The question arises, had the city council authority to contract to have these works done? We judicially know that no part of the Tallapoosa river is within the corporate limits of the city of Montgomery; and so far as the contract declared on binds the defendant to build the bridge across the Tallapoosa river, we hold that no recovery can be had. The charter of the Montgomery and Wetumpka Plank-Road Company is not brought before us, and we cannot learn the *termini* or route of that road, further than the names of the places Montgomery and Wetumpka indicate the same. Whether any, and if any, what portion of the road is intended to be within the corporate limits of the city of Montgomery, we do not know.

It is a clear proposition, that the corporation of the city of Montgomery has authority to improve the streets and highways within its limits. It may make valid contracts to have these works performed. There is nothing on the face of this bond, or in the complaint, which shows that said road, or at least a portion of it, is not within the city of Montgomery, and, therefore, under the jurisdiction of the city authorities. On demurrer, we do not think the court was authorized to presume such was not the case; but, on the contrary, in the absence of anything apparent on the pleadings, or in the contract, showing such to be the case, we think the court should rather have presumed that the city council, in making said contract, did not transcend its powers.

This case, then, presents the question of a contract or promise, based, so far as we are informed, on a good and valuable consideration, to do and perform certain works, a part of which the city of Montgomery had authority to contract for, and a part of which was without the pale of their powers. In such case, is the contract invalid in *toto*, or is it valid in part, and invalid in part? Where a bill of exchange was accepted, to secure the payment of a sum of money, consisting partly of a debt from which the acceptor had been discharged under the insolvent debtor's

act, and partly of a new debt, it was held, that the bill was a valid security as to the latter, although it was void as regarded the former debt.—See the authorities to this effect collected in Addison on Contracts, (2d Am. ed.) 147–8. So, a contract, on a valuable consideration, not to engage in a particular trade in London or Westminster, or within six hundred miles thereof, was held binding as to London and Westminster; but, as to the six hundred miles, it was held void, because it was in general restraint of trade.—See Price v. Green, 16 Mees. & Wels. 346; Doe v. Pitcher, 6 Taunt. 359; Grand Gulf Bank v. Archer, 8 Sm. & Marsh. 151. We think these authorities are decisive of the question we are considering; and that, if any of the work which the contract required the obligors to perform was within the city of Montgomery, the bond, to the extent of the damages sustained from that breach, was and is recoverable. This question cannot be determined absolutely without inspecting the charter of the Montgomery and Wetumpka Plank-Road Company. That being a private corporation, and its charter not brought before us, either in the pleadings or proof, we cannot look to it in determining these questions.

It is further urged in favor of the maintenance of this action, that inasmuch as the plank-road company has had the benefit of the city bonds, and obtained them on the faith of the contract which is the subject of this suit, the obligors in this bond should be held estopped from disputing the authority of the city to make the contract. If this doctrine be established, then corporations, no matter how limited their powers, may make themselves omnipotent. They have only to induce persons to contract with them beyond the scope of their powers, and their very usurpations have the effect of conferring powers on them which the legislature have withheld. A proposition so erroneous can scarcely need argument to overturn it.—See, on this point, Penn., Del. & Md. Steam Nav. Co. v. Dandridge, 8 Gill. & J. 248, 319–20, and authorities cited; Albert v. Savings Bank of Baltimore, 1 Md. Ch. Dec. 407–13; Smith v. Ala. Life Ins. & Trust Co., 4 Ala. 558; Hodges v. City of Buffalo, 2 Denio, 110; Life & Fire Ins.

Co. v. Mechanics' Fire Ins. Co., 7 Wend. 31; N. Y. Firemens' Ins. Co. v. Ely, 5 Conn. 560. It will be remembered that, in this case, it is the corporation itself which sues. The suit is an attempt to enforce a contract which the corporation had no authority to make, save as above indicated. We cannot apply the doctrine of estoppel to such a case as this. It is not necessary that we should now go further.

For the reason above stated, the judgment of the circuit court is reversed, and the cause remanded.

RICE, C. J., dissenting.