A. W. TILLEY, et al. Executor of WM. ELLIS v. PEGGY
ELLIS, et al.

*Will, Construction of—Devise—Latent Ambiguity—Intention of Testator.*

1. A testator devised property to the use of " The Methodist Episco-
pal Church," and to a proceeding instituted by the executors
to obtain the advice of the court as to the application of the
devise  the heirs of the testator and two  religious  organiza-
tions, the " Methodist Episcopal Church" and the " Methodist
Episcopal Church, South " were made parties and answered,
the heirs claiming the devise to be void for uncertainty, and
each of the religious organizations claiming to be the
intended devisee ; it was error to reject testimony offered and
tending to show (1) that the legal name of neither organiza-
tion  came within the very words of the will, one being
" Trustees of the Methodist Episcopal Church," and the
other the " Methodist Episcopal Church, South," and (2) that
both organizations were commonly known as " The Method-
ist Episcopal Church."

2. In such case an issue should have been submitted as to which
church the testator intended to devise the property by the
use of words applying strictly to neither, but in common
parlance to both, on which issue admissions or evidence that
one church had numerous members and church buildings in
the testator's county, and the other none, would have been
competent to show the testator's intention.

FAIRCLOTH, C. J. dissents, *arguendo*, in which FURCHES, J.,
concurs.

CIVIL ACTION, tried at March Term, 1896, of DURHAM
Superior Court, before *Coble, J.*, and a jury.   The purpose
of the action was to obtain instructions of the court as to
the application of the devise made in item 2 of the last
will and testament of plaintiffs' testator.   The sixth para-
graph of the petition was as follows :

" 6. That the second item of their testator's will is as
follows :  ' I give and devise to my beloved wife, Viney

TILLEY *v.* ELLIS.

Ellis, all of my property, both personal and real, of every description, to have and to hold the same during her natural life, at her death to the use of the Methodist Episcopal Church; if not built before my death to be built out of my estate, one-fourth of a mile east of my homestead, at some convenient place'; that Viney Ellis, wife of said testator, is dead, and no Methodist Episcopal Church was built, either by the testator or any other person or persons, near the testator's homestead during his lifetime, nor is there any congregation of any such Methodist Episcopal Church organized or formed, nor are there any trustees capable of holding property of any such Methodist Episcopal Church, and plaintiffs are not advised upon whom to make service of process in order to have before the court such Methodist Episcopal Church, that the construction and validity of such devise may be determined; that there is and has been for many years, long prior to the date, 20th day of June, 1887, (on which said testator made his will as aforesaid,) a Methodist Episcopal Church, duly organized with a congregation and regular services, in about three miles of testator's homestead, which church was well known to the testator at the time he executed the will aforesaid, and plaintiffs are unable to determine from the will of their testator whether this be the church to which he referred or not, or whether the devise is valid and plaintiffs, as executors, are empowered to build a church as directed in the will."

The plaintiffs prayed the instructions of the court on the will aforesaid, as follows:

" 1. Is the devise in the second item of the will to the use of the Methodist Episcopal Church valid, and, if so, to what Methodist Episcopal Church shall the remainder of the estate be applied?

" 2. If the said devise to the use of the Methodist Epis-

TILLEY *v.* ELLIS.

copal Church is valid, and no church building as contemplated by the testator was built in his lifetime, are the plaintiffs empowered by the said will to erect a building out of the estate of their testator within one-fourth of a mile of his homestead?

" 3. Upon whom shall plaintiffs have summons issued and served to answer for such Methodist Episcopal Church, in order to convert said land into money with which to build said church?

" 4. Or is said devise invalid, and are the defendants entitled to remainder of said estate as the heirs-at-law of William Ellis?"

The heirs of Wm. Ellis, having been made parties, answered as follows:

" 2. That allegation sixth of the complaint is true in all its statements, except that which refers to 'a Methodist Episcopal Church" having been organized prior to 1887, within about three miles of the testator's homestead, which is denied, for the defendants are informed and believe there is not only no organized congregation of such church, but no persons who are now members thereof in that vicinity. But the defendants admit there is an organized church, having congregations, members and regular service, under the style and name of " The Methodist Episcopal Church, South."

" And the defendants answering further say: That they are advised and believe the clause of the will of Wm. Ellis, deceased, referred to in Article 6 of the complaint in this action, is null and void, and of no effect, because of the uncertainty of the object of the legacy.

" Wherefore the defendants pray of the court a construction of said will and testament according to law, and such orders and decrees and judgments as the court may deem right, proper and lawful."

The defendants, the Methodist Episcopal Church, having been summoned to answer the complaint of the plaintiff, answered as follows :

" 1. That the allegations in the 6th Article of the complaint, to-wit :  ' Nor is there any congregation of any such Methodist Episcopal Church organized or formed, nor are there any trustees capable of holding property of any such Methodist Episcopal Church,' are not true.  But, on the contrary, there is in North Carolina, and was at and before the date of the said William Ellis' will, a well-known church organization, under the name and style of the ' Methodist Episcopal Church,' duly constituted and organized within the State of North Carolina, having and holding from time to time annual conferences, and having its pastoral work divided up into five districts, to-wit :  Bakersville, Clyde, Gladstone, Morehead City and Statesville ; that at the last annual conference of said Methodist Episcopal Church, held at Clyde, in the county of Haywood, within said State of North Carolina, it appears, according to the official journal and church statistics, that said conference had fifty-nine local preachers, having in charge, within the said State of North Carolina, one hundred and forty-six established churches, with a total membership of 7,266 members ; that each of said church congregations has a board of trustees, (not less than three, nor more than nine,) capable of holding such property, and said Methodist Episcopal Church has a General Board of Trustees composed of twelve members, six ministers and six laymen, appointed by the General Conference, capable of receiving donations, bequests, grants, etc., and by Section 316 of the Book of Discipline, issued by said Methodist Episcopal Church, it is provided as follows :

" When any such donation, bequest, grant or trust is made to this board, *or to the church*, it shall be the duty of the pastor in the bounds of whose charge it occurs to give an early notice thereof to the board, which shall proceed without delay to take possession of the same; that Durham county is within said Gladstone District of said Methodist Episcopal Church; that the said Methodist Episcopal Church trustees are ready and willing to accept the devise under the will of said William Ellis, deceased, and execute the trust therein imposed.

" That as to the other allegations in the aforesaid Article 6 of the complaint, this defendant has no knowledge nor information sufficient to form a belief, (except the quotation from the testator's will therein set forth,) and therefore denies the same.

" II.  That as to the allegations of Article 3 of the complaint, this defendant has no knowledge nor information sufficient to form a belief, and therefore denies the same."

J. A. Cunninggim, in behalf of himself and the other Trustees of the North Carolina Conference of the Methodist Episcopal Church, South, made himself a party to this action and answered as follows:

" 1.  That the Methodist Episcopal Church, South, in the State of North Carolina, has two conferences, one called 'The North Carolina Conference' and the other 'The Western North Carolina Conference,' and that Durham county and the adjacent counties are in the territory of the North Carolina Conference, and the Methodist Episcopal Church, South, in said counties belong to said conference.

" 2.  That the said North Carolina Conference has duly appointed a number of trustees, to-wit: J. A. Cunninggim, B. R. Hall, J. N. Cole, R. F. Bumpass, W. S. Black, W. H. Moore and J. T. Gibbs, called ' The Trustees of

the North Carolina Conference of the Methodist Episcopal Church, South,' and that said trustees have the power and authority to receive donations and take and hold property, real and personal, in trust and for the use of said Methodist Episcopal Church, South.

" 3. That said trustees are willing and ready to accept and execute the trust imposed by the terms of the will of Wm. Ellis, deceased, and will do so by erecting a church house at a certain spot, about one-fourth of a mile from the homestead of said William Ellis, which, said affiant is informed and believes, is a suitable place for a church, and was selected and pointed out as such by said testator in his lifetime.

" 4. That the common and usual names, for the Methodist Episcopal Church, South, in North Carolina, and especially in Durham county, are, ' Methodist Episcopal Church,' omitting the word ' South ' in said name, and the ' Methodist Church,' omitting both ' South ' and ' Episcopal.'

" 5. That, as affidant is informed and believes, said William Ellis was an earnest and zealous member of the Methodist Episcopal Church, South, at the time of his death, had been such prior thereto for many years, and was never a member of any other church.

" 6. That, as affiant is informed and believes, there is no church for whites, of the Methodist Episcopal denomination, (commonly called ' Northern Methodists ),' in Durham County, nor in any adjacent county."

Wherefore defendant prays judgment :

" 1. That said last will and testament of said William Ellis be declared valid and certain, and that the executors of the same be directed and authorized to sell said land, and after deducting the expense of administration, and

paying the debts due by said testator, pay the residue to said trustees, to be used by them in the erection of a church as set out in Article 3.

" 2. For such other and further relief as he may be entitled to in law and equity." The issues were as follows:

### STATEMENT OF CASE ON APPEAL.

After the jury were sworn and empaneled and the pleading read the Methodist Episcopal Church, South, tendered issues, and offered to introduce evidence tending to sustain the same.

(1) Is the name " Methodist Episcopal Church " a common or short name for " Methodist Episcopal Church, South," and by such name known ?

(2) Did the testator, by the words in his will, " Methodist Episcopal Church, " intend the "Methodist Episcopal Church, South ? "

(3) Is the corporate name of the " Methodist Episcopal Church " the Trustees of the Methodist Episcopal Church ?"

The court declined to submit any of the issues tendered, and the Methodist Episcopal Church, South, excepted. Here copy the pleadings—the complaint, and answers.

At the hearing it was admitted that one organization in this State was the Methodist Episcopal Church and the other in this State the Methodist Episcopal Church, South. But it was not admitted that the Methodist Episcopal Church was the corporate name. It was further admitted that there was no organized congregation of the Methodist Episcopal Church in this, Durham county, but it was admitted that there were organized congregations of Christians in North Carolina known as the Methodist Episcopal Church.

The court construed the will and rendered judgment as follows :

" This cause coming on to be heard, and the same being heard at this term, the pleading having been read, upon the facts admitted and agreed upon on all sides, after the argument of counsel representing the respective claimants, the court being called upon to consider and adjudge the matters in controversy in this action, and construe the will of the late William Ellis, deceased, (a copy of which is attached to the complaint),

" It is considered, adjudged and decreed by the court as follows :

" (1) That the said will of the said William Ellis, deceased, appearing from the pleadings to be his last will and testament, it is adjudged by the court that the same is valid, and every part thereof is valid as hereinafter construed.

" (2) That the devise in the second item thereof is a good and valid devise to the ' Methodist Episcopal Church,' and the proper legal construction of said devise is to the ' Methodist Episcopal Church,' sometimes called ' The Northern Methodist Church,' subject, as therein expressed, to the life-estate in Viney Ellis, the testator's wife, in the testator's property therein devised and bequeathed.

" (3) That the true intent of the testator was, as therein expressed, that unless such ' Methodist Episcopal Church ' should be built before his death, the same should be built out of his estate, one-fourth of a mile east of his homestead, at some convenient place.'

" (4) It being admitted that Viney Ellis, the life tenant, is dead, and it further being admitted that no such church as the testator contemplated has been built, and that in order to carry out this provision of the testator's will a sale of the testator's property, consisting of landed estate, is necessary in order to convert the same into money for the purpose of the erection of said church,

Tilley v. Ellis.

"It is therefore considered and adjudged by the court, and ordered and directed, that the executors select, reserve and set apart on the lands of the testator a suitable church site whereon to erect such church building, as near as may be 'one-fourth of a mile east of the testator's homestead,' (not less than half an acre,) and thereafter sell the balance of the estate, real and personal, belonging to the testator, and after the payment out of the proceeds of such sale of all the cost and expenses of such sale, and all unpaid debts of the testator, and the cost of this action, and the costs and expenses of their administration as provided by law, they shall apply and appropriate balance or surplus of the testator's estate to the use and benefit of the aforesaid 'Methodist Episcopal Church' for the purpose aforesaid of building the church aforesaid. If the trustees or other duly constituted church authorities of said 'Methodist Episcopal Church' shall desire to have the aforesaid surplus moneys turned over to them for the purpose aforesaid, then, upon their entering into bond with good and sufficient surety to be approved by the clerk of this court, conditioned for the faithful application of said funds, then and thereupon the said executors of William Ellis are hereby authorized and directed to turn over to said trustees or other constituted church authorities of said 'Methodist Episcopal Church' the aforesaid surplus moneys, taking their receipt therefor, and the same shall be a full and final discharge to said executors from all further liability or responsibility thereby."

All the parties except the Methodist Episcopal Church appealed.

*Mr. Jas. S. Manning*, for appellants.
*Messrs. Guthrie & Guthrie*, for appellee.

Clark, J.: The devise was to the use of the "Method-
119—16

ist Episcopal Church." The administrator filed his peti-
tion asking to what Methodist Episcopal Church the devise
should be applied, and both organizations by which those
words were used in their title were made parties and
answered, and the heirs-at-law answered, claiming the
devise to be void.

On the trial one of the defendant church organizations
admitted that its strictly legal name was " Methodist Epis-
copal Church, South," the suffix " South " being added to
the descriptive words in the will, but offered to prove that
the legal name of the other organization was " Trustees of
The Methodist Episcopal Church, " with the prefix " Trust-
ees of " added to the descriptive words in the will, and
tendered an issue to that effect. The court accepted the.
admission as to itself by the Southern Methodist Church,
but refused to allow it to prove that the Northern Method-
ist Church was also differentiated from the words of the
will by a prefix. This was error.

Again the M. E. Church, South, admitted that the
Northern competitor was commonly known as " The Meth-
odist Episcopal Church, " without the prefix, but it offered
to prove, and tendered an issue, that itself was also com-
monly known as " The. Methodist Episcopal Church,"
without the suffix. Again the judge accepted the admission
of the Southern Church against itself, but refused to permit
it to prove that it was commonly known as " The Methodist
Episcopal Church " as well as the Northern Church. This
surely was error. It is true the admission, cut in two, was
that the competitor was the " Methodist Episcopal Church,"
but that said admission fairly meant only that it was
commonly known as such, and not that such was its legal
name, is shown by the statement in the same breath that
such was not its corporate name, and the offer to prove,
and tender of an issue, that the legal name had a prefix.

TILLEY v. ELLIS.

Besides, even if the name of the Northern church had come technically within the very words of the devise, if the other church, not technically but in common speech, was known by the very same words and abounded in that section, whereas the Northern church was entirely unknown there, this would leave the intention of the testator to a jury, since the real object is to ascertain his intention.

When evidence is improperly rejected it must be taken for the purpose of the argument that if admitted it would have proved what the party offering claimed it would prove. Therefore, we must take it that, if admitted, it would have proved: (1st) That the legal name of neither organization came within the very words of the will, one being "Trustees of the Methodist Episcopal Church," and the other "Methodist Episcopal Church, South." (2d) That both organizations were commonly known as "The Methodist Episcopal Church."

Upon the pleadings the defendant, the Southern church and the heirs-at-law, had the right to prove that state of facts if they could. Then the other issue offered would also have been competent as to which church the testator intended to devise by the use of words applying, in strict letter, to neither church, but in common parlance to both. On this issue the admission that one church had numerous members and church buildings in the testator's county, and that the other had no members in that county, and similar evidence for and against, would have been competent to show the testator's intention, and if this were not shown to the satisfaction of the jury the devise would lapse for the benefit of the heirs-at-law. In refusing to submit the issues and evidence offered there was

Error.

FAIRCLOTH, C. J., dissenting: I cannot concur with the majority of the Court. On the 20th June, 1887, William Ellis executed his last will and testament, and the second item reads as follows: "I give and devise to my beloved wife, Viney Ellis, all of my property, both personal and real, of every description, to have and to hold the same during her natural life; at her death, to the use of the Methodist Episcopal Church; if not built before my death, to be built out of my estate, one-fourth of a mile east of my homestead, at some convenient place." The testator died in 1894.

This action is brought by the executors against the heirs-at-law of the testator, (Viney Ellis being dead,) for a construction of said devise, and the ".Methodist Episcopal Church," and the "Methodist Episcopal Church, South," are made parties defendant, each party filing an answer, the heirs alleging that the bequest is void for uncertainty. The last-named party tendered the following issues at the trial, and offered to introduce evidence tending to sustain the same:

1. Is the name "Methodist Episcopal Church" a common or short name for "Methodist Episcopal Church, South," and by such name known?

2. Did the testator, by the words in his will, "Methodist Episcopal Church," intend the "Methodist Episcopal Church, South?"

3. Is the corporate name of the "Methodist Episcopal Church" the "Trustees of the Methodist Episcopal Church?"

The court declined to submit any of the issues tendered, and the Methodist Episcopal Church, South, excepted.

The statement of the case on appeal by the court says: "At the hearing it was admitted that one organization in

this State was the Methodist Episcopal Church, and the other in this State was the Methodist Episcopal Church, South.    But it was not admitted that the Methodist Episcopal Church was the corporate name.   It was further admitted that there was no organized congregation of the Methodist Episcopal Church in this (Durham) county, but it was admitted that there were organized congregations of Christians in North Carolina known as the "Methodist Episcopal Church."

The court rendered judgment in favor of the Methodist Episcopal Church, and ordered the executor to apply the surplus for its benefit according to the will, and the other defendants appealed.

*The Code*, Section 3667, provides that the Synod, Conference, Convention, Religious Societies and Congregations within the State may at any time appoint trustees for such church, denomination, religious society or congregation, to receive and hold property, real and personal, for their use; and Section 3665 declares that all lands and tenements that have been or may be given to such religious bodies within the State for their use shall remain to their use, and the estate shall vest in their trustees respectively ; "and in case there shall be no trustees, then in the said churches, denominations, societies and congregations respectively, according to such intent."

We see nothing to support the contention of the heirs. The rule undoubtedly is, in regard to testamentary dispositions of property, that uncertainty as to the subject or object of a devise will be fatal to its validity.    A case in the early decisions was a gift to the Bishop " to be disposed of to such objects of benevolence and liberality as he shall most approve of," and was held void because of uncertainty, whereby its execution could not be enforced.    A more recent case (1886) was that of the will of the late Samuel

J. Tilden of New York. He gave his residuary estate to his executors, as trustees, and their successors, to hold and apply it "to such charitable educational purposes" as in their judgment would render it "most widely and substantially beneficial to mankind;" held void for uncertainty, and because the will of the trustees was submitted for that of the testator. *Tilden* v. *Green*, 130 N. Y., 29. See like cases, *Bridges* v. *Pleasants*, 4 Ired. Eq., 26 ; *Johnson* v. *Johnson*, 36 Am. St. Rep., 104.

The reason why these testamentary dispositions are held void is, that there can be no one who can demand the benefit of the trust on the ground that he is one of a class for whose benefit it was intended by the *testator*, and because there is no one upon whom the court can lay its hand and compel performance.

The heirs in this case cannot claim the property because the subject (the property) is certain on the face of the will and the object (the legatee) is either certain or can be made so under the maxim, "*ut res majis valeat quam pereat.*" The suggestion that the bequest to the Methodist Episcopal Church is not made in its corporate name cannot prevail. Under *The Code, supra*, the church or sect, &c., now has capacity in religious congregations of particular denominations in the aggregate to take property for the religious uses of the congregation or church, known as a denomination, thus enabling each church to fulfill its functions of benevolence and instruction of its members and others. *Bridges* v. *Pleasants, supra.*

The position of the appellant, the Methodist Episcopal Church, South, assumes that there is ambiguity on the face of the will. We cannot concur in that construction. There is no serious contention that there is a patent ambiguity in this case, as we have already said. A patent ambiguity is one of construction upon the face of the instrument alone,

without any  help from  outside  evidence, and arises from such defect on its face,  using  language  so  vague that no subject is indicated, and the court cannot give a  meaning without making a will, " which it has no right to do."

A latent  ambiguity arises where there is  no  defect  in the description of the person  or thing on the face of the instrument, but it becomes necessary to *identify* the person or thing and fit it ( the  person  or  thing ) to the description  in  the  instrument, and in all  such  cases evidence *dehors* becomes  admissible and  necessary, for the  reason that the will or other instrument may describe but it cannot *identify*.  Suppose a devise to  John  Smith ; there is no  ambiguity  in that—no  room  for  construction ; but where one appears claiming to be John Smith, he must be identified by  evidence *dehors* either by admission or the testimony of witnesses. *McDaniel* v. *King*, 90 N. C., 597 ; *Taylor* v. *Maris*, Ibid., 619.   All respectable authorities agree that evidence cannot be  heard to  explain, add to, take from, modify or contradict a will, when its terms plainly  indicate the persons or  things  mentioned in it. Although it is admitted, by all the  defendants, that there is an organization in this State known  as  the  Methodist Episcopal Church, and another known  as  the  Methodist Episcopal Church,  South,  the  latter, answering  by that name,  avers  that it is  sometimes  called  the  Methodist Episcopal Church, and offers to fit itself to the description in the will by showing its averments by outside evidence. The answer to that proposition is  that there is  no  uncertain language on the face  of the will, either as to the subject or object of the bequest, and the other  church  organization, admitted to exist in North Carolina, in  terms, fits the language of the will without any  extrinsic  evidence. To admit such evidence would open the way to the danger of allowing such proofs to establish a will, in  the  face  of

the unambiguous language of the will itself, as was attempted to be done in *Tilden* v. *Green, supra.* This subject is fully discussed and the whole ground covered in the able opinion of the Court, in *President, &c., Deaf and Dumb Inst.* v. *Norwood,* Busbee Eq., 65. Extrinsic evidence is admitted, not for the purpose of importing into the instrument an intention not expressed in it, but simply for the purpose of elucidating the meaning of the words employed ; and the line which separates what is in the instrument from direct evidence of intention, independent of the instrument, must be kept steadily in view. The court must declare what is the meaning of that which is written, not of what was intended to be written, and thereby avoid letting the case fall on the wrong side of the line, as was done in *Taylor* v. *Bible Society,* 7 Ired. Eq., 201. The question therefore is one of *construction* and not of identification. I think the judgment should be affirmed.

FURCHES, J. :   I concur in the dissenting opinion.