STATE v. RAILROAD.

(Filed May 22, 1906).

*Quarantine Regulations —Health —Cattle —Transportation —Department of Agriculture—Regulations—Judicial No- tice—Legislative Power—Delegation—Statutes — Repeal —Evidence—Foreign Laws.*

1. The courts will take judicial notice of the political subdivisions of the State, the boundary lines of counties therein, when fixed and declared by public statutes, the geographical positions of cities and towns within the limits of their jurisdiction, and prominent water courses within such limits when referred to in public statutes.

2. Where the quarantine regulations of the United States Department of Agriculture, relating to the transportation of cattle, which were adopted by the State Board of Agriculture, provided that no cattle originating in the quarantined district as therein de- scribed, should be moved into "that part of Burke south of the Catawba River," this court judicially knows that a shipment of cattle from Burlington to Morganton has been across the line fixed as a quarantine line.

3. Laws 1901, chapter 479, section 4 (b), authorizing the commissioner of agriculture, with the consent of the State board, "to establish and maintain cattle districts and quarantine lines, to prevent the infection of splenic or Spanish fever" confers power to make regulations prohibiting the transportation of cattle.

4. Laws 1901, chapter 479, section 4 (b), authorizing the commissioner of agriculture and the State board to make regulations concern- ing the transportation of cattle is not an unwarranted delega- tion of legislative power, as the commissioner and board are only given power to establish the conditions and certain admin- istrative regulations under and upon which the statute is made to apply.

5 The regulations of the State Board of Agriculture as to the trans- portation of cattle, authorized by Laws 1901, chapter 479, are not repealed by prior and subsequent statutes requiring railroads to receive and ship freight, under severe penalties in case of wilful failure, as these statutes should be construed as only re- quiring railroads to receive and ship freight when not forbidden by this or other valid interfering regulations.

6. The regulations of the State Board of Agriculture, certified under the hand of the secretary with the seal of the department, are properly proved, as provided by Revisal, sections 1616-7.

7. A pamphlet purporting to contain the regulations of the United States Department of Agriculture, which was not certified by any officer of the department and had no seal attached and did not purport to have been issued or published by authority of the department, was not properly authenticated, nor otherwise competent, for admission as testimony.

8. Regulations of the United States Department of Agriculture concerning the transportation of cattle, made pursuant to public statutes and designed and intended to control the conduct of the general public, have the force of a public law and the courts having jurisdiction of questions arising thereunder must take judicial notice of their existence and when such regulations operate and take effect in this State they are not a foreign law within the meaning of Revisal, section 1594.

INDICTMENT against the Southern Railway Company, heard by *Judge M. H. Justice* and a jury, at the March Term, 1906, of the Superior Court of BURKE.

This is an indictment against the defendant for shipping cattle in violation of certain quarantine rules and regulations adopted by the North Carolina Board of Agriculture.

The Congress of the United States by an act passed May 29, 1884, established a Bureau of Animal Industry, with authority to provide for the suppression and extirpation of pleuro-pneumonia and other contagious diseases. Compiled Statutes of U. S., 1901, p. 299. By section 3 of the said act it is provided:

"That it shall be the duty of the Commissioner of Agriculture to prepare such rules and regulations as he may deem necessary for the speedy and effectual suppression and extirpation of said diseases, and to certify such rules and regulations to the executive authority of each State and Territory, and invite said authorities to co-operate in the execution and enforcement of this act."

Under the authority thus conferred, the United States Department of Agriculture promulgated certain quarantine rules and regulations relating to the transportation of cattle, and the same were certified to the North Carolina Board of Agriculture in order to secure the co-operation of that body in the enforcement of the said rules and regulations. At a meeting of the North Carolina Board in 1903, the annual regulations of the United States Department of Agriculture were adopted. From these orders it will appear that a quarantine line extending across the United States was established, and the transportation of cattle was prohibited from the area south of said line to any portion of the United States, north, east, or west thereof, except as provided in the order, for one year from and after the first of January, 1903. Another order was issued December 27, 1902, modifying order No. 101 in accordance with the action of the North Carolina Board of Agriculture, and provided that during the continuance of order No. 101 no cattle originating in the quarantined district, as described in said order, should "be allowed to move into the counties of Surry, Wilkes, McDowell and that part of Burke south of the Catawba River." These orders appear in the 19th Annual Report of the Bureau of Animal Industry, 1902, pp. 602, 604, 610, 611. The State of North Carolina lies south and southeast of the Federal quarantine line.

The defendant in October, 1903, transported over its line of railway a heifer from Burlington in Alamance County, North Carolina, to Morganton in Burke County, said State. Burlington lies south of the Federal line and therefore in the quarantine district, and Morganton is situated in that part of Burke County lying south of the Catawba River, and in a territory into which it was unlawful to transport cattle. The indictment alleged that the offense was committed in the year 1903. The first bill was found at January Term, 1904, and the second at March Term, 1906. The defendant moved

to quash the bills of indictment.  Motion overruled and the defendant excepted.

The defendant objected to the proof offered by the State and admitted by the court as to the resolution of the State Board of Agriculture adopting (as regulations of the State Board) the quarantine regulations and amendments of the U. S. Department of Agriculture as to the transportation.  This was certified under the signature of T. K. Bruner, Secretary of the Board, with the seal of the North Carolina Department of Agriculture affixed—admitted by the court, and defendant excepted.

The defendant further objected to the proof offered and admitted by the court as to the quarantine regulations of the U. S. Department of Agriculture, referred to and adopted by the resolution of the State Board—admitted and defendant excepted.

The proof set forth in the case on appeal as Exhibit B, seems to have been a printed pamphlet containing the regulations referred to, purporting to have been made by the U. S. Board of Agriculture, December 26, 1902, and an amendment thereto made by said department December 27, 1902, extending the same for one year over the designated territory, and both purporting to be signed by James Wilson, Secretary of the Department.  This pamphlet does not purport to have been issued or published by the authority of the United States Department of Agriculture, and there seems to have been no proof offered as to the authenticity of this document other than what is contained on its face, i. e., that it is headed "United States Department of Agriculture," "Regulations Concerning Cattle Transportation."  An examination and comparison made here disclose that the document offered and admitted in the court below is a correct copy of the department regulations as contained in the bound volume of the same, purporting to have been made, printed and issued by authority of the

141——55

United States Department of Agriculture and its secretary, James Wilson. But the bound volume was not received in evidence.

At the close of the testimony the defendant prayed the court to instruct the jury that on the entire testimony they should render a verdict of not guilty. Prayer refused and defendant excepted. The court charged the jury that if they believed the evidence they would render a verdict of guilty. There was a verdict of guilty, judgment, and the defendant excepted and appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*S. J. Ervin* for the defendant.

HOKE, J., after stating the case: The statutes of North Carolina, Laws 1901, chapter 479, sec. 4, subsec. b, author-ize the Commissioner of Agriculture, by and with the advice and consent of the board, "to make investigations adapted to promote the improvement of milk and beef cattle, and espe-cially investigations relating to the diseases of cattle and other domestic animals, and shall publish and distribute from time to time information relative to any contagious diseases of stock and suggest remedies therefor, and shall have power in such cases to quarantine the infected animals and to regulate the transportation of stock in this State, or from one section of it to another, and may co-operate with the United States Department of Agriculture in establishing and maintaining cattle districts or quarantine lines to pre-vent the infection of cattle from splenic or spanish fever."

Under and by virtue of this enactment, the State Commis-sioner, acting with the State Board of Agriculture at its May meeting, 1903, adopted, as regulations of the State Board, the "Annual Regulations of the United States Department of Agriculture, concerning interstate cattle transportation." These regulations prohibit during the year 1903 the ship-

ment of cattle from the quarantined into protected territory.

It is a well established principle that the courts will take judicial notice of the political subdivisions of their States, and of the boundary lines of counties therein when fixed and declared by public statutes, of the geographical positions of cities and towns within the limits of their jurisdiction, and also of the existence and placing of prominent water courses within such limits when referred to in public statutes. 17 Am. & Eng. Enc., pp. 904, 912; *State v. Snow,* 117 N. C., 774; *Montgomery v. Plank Road,* 31 Ala., 76; *De Baker v. Railway,* 106 Cal., 257; *Wood v. Fowler,* 26 Kan., 682. The quarantine line and the designation of the protected territory having been indicated by the border line of counties in the State fixed by public statutes, except a portion of the protected territory designated as "that part of the county of Burke lying south of the Catawba River," when it is proved that the defendant, within the period covered by the regulations, has shipped cattle from Burlington, N. C., to Morganton, N. C., we judicially know that this shipment has been across the line fixed as a quarantine line; and, assuming that the department regulations have also been established by proper proof, we are of opinion that there has been a criminal violation of law and the defendant has been properly convicted. The general objections urged against the validity of this conviction can none of them be sustained.

It is contended, first, that the commissioner, with the consent and advice of the board, is only given authority to regulate the transportation of the cattle, and that this does not authorize the prohibition of such transportation. But this is a misconception of the scope and meaning of the statute. It does confer the power to make regulations about transporting cattle, but the additional power is given, and this is the main and controlling purpose of this section "to establish and maintain cattle districts and quarantine lines, to prevent the infection of cattle from splenic or Spanish

fever." It is not suggested, nor is there any evidence offered tending to show that this is an unreasonable regulation, or that the same is not calculated to effectuate the end and purpose of the law. The position is that the power asserted is not within the purview of the act; and, as we have seen, there is nothing to warrant giving the act this restricted significance. Regulations of this kind are very generally upheld both in State and Federal decisions. *Railway v. Smith,* 20 Tex. App., 451; *Reid v. People,* 29 Colo., 333; *State v. Ramussen,* 7 Idaho, 1; *Kimmish v. Ball,* 129 U. S., 217.

Again, it is urged that the prosecution must fail because the statute is an unwarranted delegation of legislative power to the Board of Agriculture, which is a branch of the executive department of the government. The answer, here too, is that the statute does not do what is ascribed to it. The crime is fixed and declared by the Legislature as expressed in the act. The commissioner and board are only given power to establish the conditions and certain administrative regulations under and upon which the statute is made to apply. In 8 Cyc., p. 830, it is said that "while a legislative body cannot delegate the power to legislate, the Legislature may delegate the power to determine some facts or state of things upon which a statute makes or intends to make its own action depend,"—citing numerous authorities. The principle is well established with us and is applied in various instances. *Express Co. v. Railroad,* 111 N. C., pp. 463, 472.

It is further insisted that there are numerous statutes in this State, passed both before and since the one now being considered, requiring the defendant to receive and ship freights under severe penalties in case of wilful failure or refusal, and that these statutes should be so construed as to modify or repeal the act in question and protect the defendant from prosecution. This, we hold, would not be in accord with sound and accepted principles of statutory construction. It

is well established that implied repeals are not favored. As is said in 26 Am. & Eng. Enc., p. 726, "Every effort must be used to make all acts stand, and a late act will not operate as a repeal of an earlier one if by any reasonable construction they can be reconciled. In *Winslow v. Morton,* 118 N. C., 486, 491, *Mr. Justice Avery,* in a well considered opinion, lays down the correct rules pertinent to this inquiry, as follows: "The courts have universally given their sanction to the rules of construction: 1. That the law does not favor a repeal of an older statute by a later one by mere implication. *State v. Woodside,* 8 Ired., 104 (30 N. C.); *Simonton v. Lanier,* 71 N. C., 498. 2. The implication in order to be operative must be necessary, and if it arises out of repugnancy between the two acts, the later abrogates the older only to the extent that it is inconsistent and irreconcilable with it. *Wood v. U. S.,* 16 Peters, 363; *Chew Heong v. U. S.,* 112 U. S., 549; *City of St. Louis v. Independent, etc.,* 47 Mo., 146. A later and an older statute will, if it is possible and reasonable to do so, be always construed together, so as to give effect only to the distinct parts or provisions of the latter, not inconsistent with the new law, but to give effect to the older law as a whole, subject only to restrictions or modifications of its meaning, where such seems to have been the legislative purpose. Sutherland Const., sec. 158. A law will not be deemed repealed because some of its provisions are repeated in a subsequent statute, except in so far as the latter plainly appears to have been intended by the Legislature as a substitute. *Chicago, etc., R. Co. v. U. S.,* 127 U. S., 466; *State v. Stoll,* 17 Wall., 425; *Longlois v. Longlois,* 48 Ind., 60; *Casey v. Harned,* 5 Clarke (Iowa), 1; *State v. Custer,* 65 N. C., 339; Code, sec. 3766; *Breitung v. Lindaner,* 37 Mich., 217; *Trinity Church v. U. S.,* 143 U. S., 457."

Applying these rules to the question here raised, we are of opinion that the correct interpretation of these statutes would

require that the defendant should receive and ship freight when not forbidden by this or other valid interfering regulations. We hold, therefore, that on the proof admitted there was no error in overruling the defendant's motion to quash the bills or in refusing to charge that if the evidence was believed the jury should render a verdict of not guilty.

The defendant, however, contends that a new trial should be awarded for erroneous rulings of the trial court on questions of evidence: 1. In admitting the resolutions of the State Board of Agriculture. 2. In admitting the pamphlet containing the regulations of the U. S. Department of Agriculture.

The first was certified under the hand of T. K. Bruner, the secretary, with the seal of the Department of Agriculture affixed, and, if proof were required, this would seem to be in exact compliance with the provisions of the statute. Revisal, sections 1616 and 1617.

On the second objection: The pamphlet containing the department regulations was not, we think, properly authenticated nor otherwise competent for admission as testimony. The paper was not certified by any officer of the U. S. Department of Agriculture and had no seal attached. It did not purport to have been issued or published by authority of the department, and had nothing to indicate that the paper had any connection with that department, except that it contained as a printed heading "United States Department of Agriculture," "Regulations Concerning Cattle Transportation." If proof of these regulations, therefore, had been necessary, the paper writing was not admissible in evidence, and its admission would have constituted reversible error. No such significance or effect, however, can attach to the ruling of the judge below in this respect, because the court is of opinion that these regulations were of such a character that the courts of this State are required to take judicial

notice of their existence and contents, and therefore no proof was required by the State as to either.

It is a well recognized principle sanctioned by the great weight of authority that when in pursuance of a public statute one of the principal departments of our government frames and establishes regulations, concerning the public interests and by which the general public are to be controlled, such regulations, when properly made and framed by virtue of the statute, have the force of a public law; and the courts having jurisdiction of questions arising thereunder must take judicial notice of their existence. As said in *Low v. Hanson,* 72 Me., 105: "Rules and regulations of one of the departments established in accordance with a statute have the force of law, and the courts take judicial notice of them"— citing *Gratiot v. U. S.,* 4 How., 80, and *Ex Parte Reed,* 100 U. S., 13. To same effect are *Caha v. U. S.,* 152 U. S., 211, 222; *Larson v. Bank,* 66 Neb., 595, 598; 16 Cyc., 903. There are authorities to the contrary, but an examination will disclose that in most instances these cases were concerning regulations which originated with the department, or, if made pursuant to a statute, they were departmental regulations simply, not affecting the general public, and not designed or intended to control its conduct.

It is argued that our State statutes (sections 1594, 1616, 1617,) provide for a simple method of proof in cases of this character, and that the establishment of this method gives indication that such proof should be required. Section 1594 provides for a method of proof by establishing laws, proclamations, edicts, ordinances of *other* States, Territories and foreign countries. As heretofore stated, a department regulation made pursuant to the public statutes, designed and intended to control the conduct of the general public, has the force of law. When such a regulation by the Federal Government operates and takes effect in the State of North Carolina, it is in no sense a foreign law, and section 1594

does not provide for its proof. In 13 Am. & Eng. Enc.,
1053, it is said: "The laws of an American State are
never considered as foreign in the Federal Courts, and *vice
versa,* those which find their origin in the Federal branch
of the government are treated as domestic laws in the tri-
bunals of the different States." Apart from this, under
and by virtue of our State statutes, these regulations have
been adopted by our State board and have become quarantine
regulations of the State, designed and intended to control the
conduct of the citizens of the State, and as State regulations
having the force of law, here, by virtue of the State statutes,
the courts of this jurisdiction are required to take judicial
notice of their existence. The suggestions as to sections
1616 and 1617 are fully met by applying their provisions
to those records and documents of which courts do not take
judicial notice.

It is further contended that it might, in certain instances,
operate with great harshness to apply the principle "of tak-
ing judicial notice" to these departmental regulations. But
this position, while it has no real bearing on the legal aspect
of the question, is not well considered. The principle is
only one of procedure, relieving the State of necessity of pro-
ducing proof of these regulations at the trial, and has no
direct bearing as to their force and effect on the conduct of
the citizen. So far as the public are concerned, and it is
only here that an enforcement without actual notice might
operate with some severity, the regulations having the force
of law, the citizen must take notice of them at his peril, and
this, regardless of how they must be established at the trial.
This result is in no way affected by the present decision,
which only holds on this question, that at the trial the prose-
cution is not required to produce proof of regulations which
have the force of public law.

As a matter of fact we are informed that our State De-
partment of Agriculture, mindful as it ever has been of its

duties, and alert and efficient to do what it can to subserve the public interests and promote the public weal, has furnished copies of these regulations to all common carriers doing business in the State, and has had posted, in durable form, notices in conspicuous places on all public roads where they cross the quarantine lines within the State, so that there is no reasonable probability that any citizen can violate these regulations without having had opportunity of informing himself of their provisions.  There is no error in the proceedings below and the judgment is

Affirmed.