CRISSIE BOWSER and JOHN SHANNON v. GEORGE T.
WESCOTT.

(Filed 17 September, 1907).

1. **Vacant Lands—Protestant—Title.**

When it appears that protestants to the entry upon State's lands
are in possession of the *locus in quo*, but fail to connect their title
with the former owners under whom they claim, it is not an
admission of the absence of title, and the protest should not be
dismissed as against the subsequent enterer.

2. **Same—Protestant—"Enterer"—Burden of Proof—Interpretation
of Statutes.**

Proceedings of protest against the enterer on State's lands is
not a civil action within the meaning of the statute, but is to
determine the right of the enterer.   Under The Code of 1883, now
Revisal, sec. 2765, providing for the protest against an entry on
the vacant and unimproved lands of the State, and in accordance
with its provisions under reasonable interpretation, the burden of
proof is upon the enterer to show, as against the protestant alone,
that the *locus in quo* was vacant land, subject to his entry.

(WALKER, J., dissenting, and HOKE, J., concurring in dissenting
opinion of WALKER, J.)

THIS is a proceeding under the entry laws (Revisal, sec.
1709, *et seq.*), tried before his Honor, *W. R. Allen, J.,* at
Spring Term, 1907, of DARE Superior Court.    From the
judgment rendered the protestants, Bowser and Shannon,
appealed.

*D. M. Stringfield* and *Ward & Grimes* for plaintiffs.
*W. M. Bond* for defendant.

BROWN, J.    It is contended by the learned counsel for the
enterer that there are admissions in the record that the prot-

estants have no title to the land entered, and that, under the
ruling in *Johnson v. Wescott,* 139 N. C., 29, the protest
should be dismissed and the enterer permitted to take out his
grant.    We fail to find any such admission in the record.
It is admitted that the protestants on the trial failed to con-
nect themselves by evidence with the possession of Ben Ether-
idge, Barbara Frost or Ned Bowser, but that is far from
being an admission of record that protestants have no title or
possession of the land in controversy and that it is open to
entry.    The evidence tends to prove that protestants are in
actual possession of the land, and were at the time the entry
was made; that there was a field cultivated on it in 1871;
that Barbara Frost cleared the land and was in actual pos-
session of it for twenty-five years; that Ben Etheridge moved
on the land thirty years ago, and that Ned Bowser had been
cutting all over the land for the same length of time.    There
is other evidence which it is unnecessary to discuss, in the
view we take of the case.    Further reflection convinces us
that we should adhere to our decision in *Walker v. Carpenter,*
at last term (144 N. C.), by which the burden of proof is
placed upon the enterer to show, at least so far as the protest-
ant is concerned, that the land is unappropriated and open to
entry.    The question had never been presented before, nor
anything analogous to it that we can find.    We, therefore,
cannot "travel with ease along the highway of precedent,"
and must be guided by what we think is a proper construc-
tion of the statute and the evident intent of the General As-
sembly in enacting it.    It is a source of satisfaction to feel.
that, if we are in error, that body will doubtless correct it in
due season.

In the first place, let it be understood that we do not intend
to reverse the ordinary rule of proof in an action to try title
to land, as this is not a civil action within the meaning of the
statute.    It is a simple proceeding, under the entry laws, to
ascertain if the enterer, so far as the protestant only is con-

cerned, has a right to enter the land described in the entry. It is well to note the history of the protest section of the entry laws as indicating the purpose of the General Assembly to relieve what was possibly a hardship upon many landowners of the State, for it is fundamental that a statute should be so construed, if reasonably possible, as to give effect to the remedy intended. Prior to the amendment to the entry laws, when the protest proceedings were introduced, an entry could not be protested. The first enterer, by paying the small stipend required by the statute, after survey, secured his grant from the State and became the *prima facie* owner of the land. The person who contested his right had to bring suit to vacate and set aside the grant, or, if sued himself, after the grant had been put in evidence, had still to assume the burden of making out an indefeasible title. And this is the law now, where the grant has been issued and legal proceedings commenced. Thus it was in the power of land speculators to enter lands generally without the least investigation of the ownership, and, by paying a mere pittance for their grants, to put the apparent owners and possessors of the lands to proof of their title. If they failed upon some slight technicality, these enterprising land hunters acquired title. This condition of the law continued from the earliest times up to 1883, when for the first time the right to protest an entry was given and provision made for establishing in the Superior Court the rights of the enterer before grant issued. Section 2765 of The Code.

We are unable to find any trace of such proceeding in the legislation of the State prior to that time. When the State had large bodies of public lands open to entry, the old law worked no great hardship, for the location of those lands was well known. But now that the State owns practically no bodies of land that are open to entry, only timber hunters, and not the State, are benefited by adhering to it. By incurring the trifling cost of an entry, and without incurring any

expense whatever of investigating titles, the enterer was enabled not only to put the owner of land to the great expense and burden of demonstrating the title in court, but to avail himself of any defect which lapse of time, death of witnesses or lost deeds and records may occasion. To remedy this great hardship must have been the purpose of the General Assembly in adopting the provisions of The Code of 1883. What else could have been the prompting motive for such legislation? If we still place upon the protestant the burden of making out his title in order to defeat a simple entry, it seems to us we defeat the only purpose of the act, for the protestant then is in no better position in contesting an entry than he would be in seeking to vacate and set aside a grant. A grant is the solemn deed of the State, under its great seal, and he who attacks it and seeks to vacate it should assume the burden of proof, for the presumption is that the sovereign owns the land she undertakes to convey. But, while it is presumed the State once owned the lands within its borders, there is no presumption that they remain vacant and are open to entry. Laying an entry is the act of the enterer, and not the act of the State, and there is no presumption that the lands he appropriates are open to entry. "So far as the State is concerned, it is a matter of indifference who appropriates the land, provided it be paid for." *Ashley v. Sumner,* 57 N. C., 123. "It is not material to the State what vacant land is granted; but such entries are not allowed to interfere with the rights of other citizens." *Pearson, C. J.,* in *McDiarmid v. McMillan,* 58 N. C., 31. We quote these extracts for the purpose of showing the State's indifference to entries of land, while on the contrary the interests of the citizen possibly gave him a very lively interest in them. It was, therefore, we think, in the interest of the citizens who own and occupy land that the act of 1883 was enacted, to the end that the right to make the entry may be established before a grant is issued. This act was repealed by the next General Assembly and the old law

restored.    Chapter 132, Acts 1885.    But we find that the General Assembly of 1891 repealed the repealing act, leaving the law as enacted in The Code of 1883 and as it now appears in the Revisal of 1905.

We can see no reason for restoring the act of 1883, unless it was in some measure intended to protect a *bona fide* claimant and possessor of land against the hardships entailed by indiscriminate entries, and to compel careful investigation before making entries.    If we still place the *onus probandi* on the protestant in his contest with the enterer, the act of 1883 might as well not have been restored.

It is contended that we are compelling the enterer to prove a negative—to produce proof exclusively within the knowledge of the protestant and practically to perform an impossibility by showing that no one has any interest in the land entered.

The first proposition is discussed in *Walker v. Carpenter*, and we will not repeat here what is there said.    In that case we attempted to analyze the statute and to show that by its terms the claimant must establish on the trial his right to enter the land.    With due deference to the opinions of others, we think it would be to entirely destroy the beneficent purpose of the act to hold that this requirement can be fulfilled by putting in evidence a simple entry, the *ex parte* act of the one who offers it.

Neither are we compelling the enterer to produce proof exclusively within some one else's knowledge, or to perform an impossibility.

The notice required by the act is intended to inform the neighborhood that the enterer claims a right to enter a certain piece of land, the boundaries of which are given.    If no one protests against such right, the grant issues as a matter of course, if the statute in other respects has been complied with.    If a protest is filed, then the enterer must make good his right as against the protestant only, and not against all

the world.    If, in response to the notice, only one person
protests, the law presumes that the enterer has infringed
upon the rights of no one else.    Under our present registra-
tion act, which bears the name of our learned brother, *Mr.
Justice Connor,* it is as possible for the enterer to run out the
adjoining boundary of the protestant and to investigate his
title deeds as it is for the protestant to do it himself.    With-
out the registration law of 1885 we would be compelled to
admit the force of the contention.    Since then the record of
title to land is an open book, free to the examination of all,
and we suspect this consideration had something to do with
the passage of the act of 1891.    We think there is a marked
distinction between this case and the cases cited in behalf of
the enterer.    *McCormick v. Monroe,* 46 N. C., 13, and
*Board of Education v. Makeley,* 139 N. C., 31.    The former
was decided thirty years before the act we are construing
was passed, and is entirely consistent with what is herein-
before said in respect to the burden of proof when a grant is
attacked.    The case further holds that, where there is an
exception in a grant, the *onus* of proof lies upon the party
who would take advantage of the exception, in which ruling
we fully concur.

The *Makeley case* was likewise an attack upon a grant
issued by the State, and the decision is in full accord with
what we have herein said in respect to grants.    In our opinion,
the *ex parte* act of an individual is not to be invested with
that presumption of rightfulness which attends the act of the
State, and there is nothing in either case which militates
against this view, as we read them.    We can say the same of
*McNamee v. Alexander,* 119 N. C., 242, in which this Court
refused to enjoin the Secretary of State from issuing a grant
upon the ground that the plaintiff had a complete remedy
given by section 2786 of The Code, now section 1748 of the
Revisal.    In conclusion, we will say that, in adhering to our
former opinion, we are not laying down a rule of proof of

our own invention, but are giving effect to legislation which has never been construed before. The effect of the decision can only be to make those who undertake to enter land more particular in making a preliminary investigation of the title to the land they seek to appropriate.

New Trial.

WALKER, J., dissenting: The case shows that the protestants, who are the nominal and, as I think, the real and substantial plaintiffs in the record, failed to show that they had any title to or interest in the land, or to prove any facts upon which they could base a claim thereto. The presiding Judge ruled, first, that the protestants must show title or interest in order to get a standing in court, and, second, that they must take the burden of proving that the land was not the subject of entry. It is impossible for me to perceive why both rulings were not correct. The first is plainly in accordance with the very words and requirements of the statute, for it is expressly provided therein, as a condition precedent to the right to file and maintain a protest, that the protestants shall have or at least claim title to or interest in the land covered by the entry, and this requirement is introduced by strict words of condition: "If any person shall claim title to or an interest in the land covered by the entry, he shall file his protest in writing." Revisal, sec. 1709. The protestants have, therefore, failed to show themselves qualified to contest the right of the defendant under his entry. In their protest they assert that they are the owners of the land, but there was no evidence of this fact in the case, although they attempted to establish it. The claim of the protestant must, of course, be *bona fide,* and the evidence must in some way connect him with the title or interest. The case might well end here, I think, with an affirmance of the judgment, as, to my mind at least, nothing is clearer than that by the explicit language of the statute the protestant must have an interest in the contro-

versy, and for a very good reason. The State is concerned only to protect those who have acquired vested rights or interests in her lands, and, where no such private interest exists, her policy is, and ever has been, to encourage the entry of lands, so that they may be cultivated, improved and enhanced in value, and thereby increase its wealth and prosperity. It surely was not intended to promote a litigious or vexatious spirit among the people by permitting any interloper who may imagine that he has a grievance against his neighbor to attack the validity of his entry. The State does not seek to encourage litigation of that kind. Its well settled policy has been the reverse of it. *Interest reipublicæ, ut sit finis litium.*

The *onus* of proof was properly placed upon the protestants by the Court. It has, perhaps, been truly said, in regard to the burden of proof, that there is no one rule, or set of harmonious rules, which furnishes a sure and universal test for the solution of any given case, and that there is not and cannot be any general solvent for all cases. But certain general principles have been recognized as affording sufficient aid for determining upon whom should rest the burden of proof, in view of the particular nature of the case under consideration. Some of the more important ones may be thus enumerated: 1. He who alleges an affirmative must take the burden of proving it. *Millsaps v. McCormick,* 71 N. C., 53; *Edmonston v. Shelton,* 46 N. C., 451; *Hinson v. King,* 50 N. C., 393; *Covington v. Leak,* 65 N. C., 594. 2. He who asserts the existence of a fact essential to his success must establish it, even though it may be alleged in a negative form. *Willett v. Rich,* 142 Mass., 356; *Nash v. Hall,* 4 Indiana, 444. 3. When a fact is peculiarly within the knowledge of a party, or the evidence which will show it is more available to him, or he has more means of knowledge concerning the fact to be established than the other party, he must assume the burden of proving it (*State v. Privett,* 49 N. C., 103; *Cook v. Guir-*

*kin,* 119 N. C., 17, and cases cited); and this is said to be true even if the proposition involved be negative instead of affirmative. *Robinson v. Robinson,* 51 Ill. App., 317. 4. Where the burden of proof is may be determined by considering which of the parties would succeed if no evidence was offered, and by the effect of striking from the record the allegation to be proved. The *onus* is on the party who, under such a test, would fail. 16 Cyc., p. 932; *Porter v. Sill,* 63 Miss., 357; *Martin v. Macey,* 4 Ky. L. R., 625. 5. The burden of proof is on the party alleging a breach of duty or the commission of a wrong, even though it involves a negative, so it has been said. *Baird v. Brown,* 28 La. Am., 842. The foregoing rules are supported by Stephens' Digest of Evidence (May's Ed. of 1886), pp. 143, 144, 145 and 146, and notes. There are, of course, other rules to the same effect, which might also be considered, but those mentioned will suffice, it seems to me, in this case, to determine upon whom is the burden of proof.

The affirmation of an allegation is not always determined by its form. Here the protestants allege that the entry is void because the lands were not the subject of entry. The allegation would be precisely the same if they had said that the entry was not valid, and thus expressed the idea negatively. But this does not destroy its affirmative character, no more than the same kind of change in the form of an allegation that a deed or other instrument is void. The statute says that, when the protest is filed, a notice shall issue to the enterer to show cause, not why his entry is valid, or why he should have a grant, as the Court virtually construes it, but "why his entry shall not be declared inoperative and void." This language clearly implies that the law regards it as *prima facie* valid if the formalities required by the statute have been observed, as was the case here, because the law will never presume a wrong, and, upon the bare entry, without any proof whatever, adjudge that the enterer has violated the law

by laying his entry on land not vacant, or otherwise not subject to entry; nor will it "declare" an act which is apparently valid to be void without some proof of its invalidity. It proceeds upon proof, and not upon mere conjecture, and gratuitously imputes evil to no man. It presumes innocence of wrong until there is evidence to the contrary, and it will assume that an entry which has not the appearance of any wrong, but which, on the contrary, has been shown to have been made according to the prescribed forms of the law, is rightful, and for this and other sufficient reasons it requires, not that it shall be validated by proof from the enterer, but that he should show cause why it should not be invalidated by proof from the protestant. Is there any precedent in the books for a court to declare, or to decree (which is in effect the same thing), an act which is apparently valid to be void, without at least some proof of its invalidity? If there is, it reverses the very elementary principle of all judicial procedure.

I am unable to see any practical difference between this case and *McCormick v. Monroe,* 46 N. C., 13, and *Board of Education v. Makeley,* 139 N. C., 31. In the last case, at p. 35, we said: "This is not an action to recover the realty, but is brought for the avowed purpose of removing a cloud from plaintiffs' alleged title, and for that purpose to have vacated and cancelled the grant issued by the State to the defendant. Plaintiffs are, therefore, as we have said, the actors, and they allege the affirmative of the issue to be the truth of the matter." The opinion of *Pearson, J.,* in *McCormick v. Monroe,* seems to have a direct bearing upon this important question. In that case the defendant, in attacking a grant, relied upon an exception in it, upon the ground that the land described in the exception had previously been entered and granted. The learned Judge said: "The only question is, Upon whom does the *onus* lie?

Clearly upon the defendant." And again: "This is but
an instance of the familiar rule that the affirmative must
be proved." A reading of that opinion will show that prac-
tically the same question was involved as we have in this
case. He further says: "Another view of the subject may
be taken. Suppose no part of the land had been previously
granted. If the *onus* be on the plaintiff (the enterer and
grantee), he can never recover one acre of it; yet it is admitted
that he is entitled to 250 acres of it. * * * It is settled
that, where the land is the subject of entry, the grant is void-
able (if attacked directly for fraud, irregularity, etc.);
where the land is not the subject of entry, the grant is void
and may be so treated in ejectment or trespass." But the
burden is always upon the party who attempts to assail it, as
*Judge Pearson* demonstrates by applying one of the cardinal
maxims of the law, and he attaches no importance to the fact
that a grant had actually issued upon the entry. It is the
fact upon which the attack is based, to-wit, a previous entry
or grant, that must be established by him who affirms the
invalidity of the subsequent grant, or who would except any
part of the land from the operation of the grant or from its
general description by reason of the existence of that fact.
This opinion of *Judge Pearson* has been approved. *Gudger
v. Hensley,* 82 N. C., 481; *King v. Wells,* 94 N. C., 344;
*Dugger v. McKesson,* 100 N. C., 11; *Midgett v. Wharton,*
102 N. C., 14; *Manufacturing Co. v. Frey,* 112 N. C., 161.
Many other cases might be cited illustrating and enforcing
the same rule, but those we have selected will suffice to show
that when a party attacks an entry or grant because the land
described in it has been previously entered or granted, or
because it is for any other reason not the subject of entry,
he must prove it or fail in his suit. There is no presumption
that land has been previously entered or granted. If there is
any presumption at all in such cases, it is precisely the other
way, namely, that it has not been. It is for this reason,

among others, that we unanimously decided, in *Board of Education v. Makeley,* 139 N. C., 31, that, where the plaintiff claimed that a grant was void and should be cancelled because it conveyed swamp land which was not the subject of entry, the burden was upon him to show it; and that case was not ejectment, but the suit was brought by the board of education, acting for and representing the State in its sovereign capacity, to set aside the grant. The two cases may, perhaps, be distinguished, by reason of a slight difference in their facts, but the principles underlying them cannot be. It has always been understood that, where a grant is assailed because it was based upon an entry which in its turn was laid upon land not vacant, the burden is upon the party assailing the grant; and the decision in this case, it seems to me, shakes the foundation of all the law upon this question, which has heretofore been considered as settled. In *Whitney v. Morrow,* 50 Wisc., 197, the right of the plaintiff to recover depended upon the question whether the land had been entered or occupied in 1828, and the Court said that, in the absence of proof, it could not be held that it had been so occupied, and, as the existence of that fact was essential to the plaintiff's success, he should have proved it, under the general rule "that the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue." That case seems to furnish a clear and striking analogy to the one we now have in hand.

The second of the principles above stated, that he who asserts the existence of a fact essential to his success must prove it, is clearly applicable to this case, as the pivotal fact asserted here is, that the land was not vacant, and this rendered the entry void. The same may be said of all the above remaining rules. It must be remembered that the statute requires the protestant to show that he has a title or interest; and whether he has or has not is peculiarly and necessarily within his own knowledge, and the evidence to establish that

fact is more available to him than to his adversary. The plaintiffs actually allege in the protest that they are the owners of the land. As to the fourth of the rules enumerated, it may be said that, if no evidence is offered in the case, the protestant must fail, as, the entry being regular in form under the statute, there is no presumption against it, and, there being no proof of the fact that the land was not vacant, there is nothing upon which a judgment for the protestant can be based. Finally, the law never presumes a wrong, but its maxim is, that all acts are taken to have been rightly and regularly done (*Omnia præsumuntur rite esse acta*). Under this maxim, the formal requisites of the statute having been complied with, the enterer will not be presumed to have committed the wrong of having entered land which was not vacant. The entry of land under such circumstances would be not only a legal but a moral wrong, and the law never imputes wrong, and surely never convicts of it until some proof is forthcoming from the accuser. The enterer, therefore, has made out a *prima facie* case, which must stand until overthrown by proof coming from the protestants.

But the crucial test in this case is, that the law will not require an impossibility of any one. (*Lex non cogit ad impossibilia*). It does not seek to compel a man to do that which it must know he cannot possibly perform. Broom's Legal Maxims (6. Am. Ed.), p. 184. How can the enterer show that the land was vacant or had not been entered? The protestant can easily show that he has acquired the title by entry and grant, or in some other way, or even that it had been entered by another than himself, if that were sufficient under the statute, but the enterer would be compelled to survey every entry and grant recorded in the county, and even then he would not have exhausted all the proof of this requisite fact, for the State's title to the land may have been acquired by another, or lost by it in some other manner. How can it be successfully denied that to do this is practically impossi-

ble ? Again, if we compare the ability of the two litigants to adduce evidence in the case, we find that the protestant's greatly exceeds that of the enterer. He is required to show only his own title to, or interest in, the land covered by the entry, and every man is conclusively presumed to be prepared with proof of that kind, because his interest is surely enlisted on that side. The law, therefore, charges him with knowledge of his own title and of all the facts which would tend to establish it.

Every reason that can be suggested would seem to demonstrate that the protestant is the party who must assume the burden of proof in such a case as this one.

The provision of the statute, that the enterer shall set forth the lines or boundaries of adjoining tracts in his entry, should count for nothing, for the land may be so located as to be sufficiently described under the statute by natural boundaries, and, besides, the proximity of land already granted to the tract in question has no tendency in law to show that the latter was not vacant when entered. Nor can I attach any importance to the argument that the enterer is the actor, for the reason that he asserts his right to enter the land. The conclusive answer is, that he has already entered it, and the protestant seeks in this proceeding to have "the entry declared inoperative and void," to use the language of the statute. He is, therefore, the aggressor, or the one who affirms the invalidity of the entry, and he should, by every rule of law and justice, be required to prove it. In *McNamee v. Alexander,* 109 N. C., 246, this Court, in a similar suit to locate an entry, placed the burden of proof upon the plaintiff who attacked it.

It is, indeed, strange that we should disagree as to whether the enterer showed any title to or interest in the land in dispute. "It was admitted that the protestants could not connect themselves with the possession of Ben Etheridge, Barbara Frost or Neal Benson, so far as it had been shown."

Indeed, no possession was shown which operated to ripen a title in any one, whether protestants connected themselves with the possession or not. It must be borne in mind that here the only attempt was to show title by possession under color. How, then, can the Connor Act of legislation apply? Would an investigation of the books show who had been in possession? And right here let us inquire why the burden should be put upon the. enterer, even if the books did disclose the title. Is it not much easier for the protestant to carry the burden, as he is perfectly familiar with his own title? And, again, the proof of title may be mixed, depending partly upon grants or deeds and partly upon possession, estoppel and other elements which go to make up a good title. When the enterer lays his entry, he acquires an equitable title to or at least an interest in or right to the land (*Plemmons v. Fore,* 37 N. C., 312), which is sometimes denominated an inchoate right or equity, and which may be assigned and is regarded as a valuable one, and protected by the law, as much so as any other vested right or estate (*Bryan v. Hodges,* 107 N. C., 492), and which, according to ordinary rules, can only be defeated by showing a better right in another. Even a subsequent enterer and grantee must take the burden of showing a superior right as against a prior entry, even when no grant has issued thereon.

It is a great mistake to suppose that the title to all the public lands of the State has passed out of it by entry and grant, or in any other way. The reports of the Secretary of State, which are public documents, and of which we take judicial notice, will show the contrary. *State v. Railroad,* 141 N. C., 846. The presumption, therefore, that any lands entered are vacant still prevails, and we can find no case in which it has even been intimated that this presumption has ceased to operate, and we know of no reason why it should not now have its full force.

I concurred in the able dissenting opinion of *Justice Hoke* filed in *Walker v. Carpenter,* 144 N. C., 674, and, for the reasons therein so clearly and forcefully stated, as well as for those herein set forth by me, I am unable to agree with the majority of the Court. The great importance of the question involved, and the effect of the ruling in this case upon prior decisions of this Court, are my only reasons for having said anything about it. That the policy of the State, which has heretofore been enforced, will be defeated by this decision, and the entry of the public lands seriously embarrassed, if not prevented, seems to me clear.

HOKE, J., concurs in dissenting opinion of WALKER, J.