173 So. 621

## BARTON v. CITY OF BESSEMER.

### 6 Div. 74.

Court of Appeals of Alabama.

Nov. 10, 1936.

Rehearing Denied Dec. 15, 1936.

Affirmed on Mandate April 6, 1937.

Harvey M. Emerson, of Birmingham, for appellant.

George W. Bains, of Bessemer, for appellee.

SAMFORD, Judge.

The petition alleges that Jack Barton is confined by the City of Bessemer without just cause upon a conviction of the violation of an ordinance by the City of Bessemer, which ordinance is alleged to be unconstitutional and void.

It is further alleged that "petitioner at the time of his trial requested time for his attorney to try his case, but was permitted only thirty minutes for his attorney to finish a cause in Circuit Court in this county and reach Police Court for your petitioner's trial." It is also alleged that "within the time required by law your petitioner, Jack Barton, presented to the authorities of the City of Bessemer a bond in the sum of $300.00 with good and sufficient surety, a bonding company, to-wit: The Indemnity Insurance Company of North America, with assets in the excess of $1,-000,000.00, and notwithstanding all these facts the city attorney of the City of Bessemer and others in the Mayor's office refused to accept and approve said bond, giving as their excuse therefor that said bonding company had not paid City of Bessemer a license, and before petitioner could secure other bond which might be acceptable to the Mayor, the time in which to file bond and appeal, to-wit: five days, had elapsed."

The return of the officer or warden having custody of petitioner disclosed that petitioner was convicted in the recorder's court of the City of Bessemer on the 20th day of July, 1936, for the violation of a city ordinance, and upon failure to pay the fine of $100 was sentenced for a term at hard labor to pay the fine and an additional punishment at hard labor of a term of 180 days.

The ordinance charged to have been violated reads as follows:

"Section One: That it shall be unlawful to print, publish, edit, issue, or knowingly circulate, sell, distribute or publicly display any book, paper, document or written or printed matter in any form advocating, advising, or teaching the doctrine that organized government should be overthrown by force, violence or any unlawful means, or to have in possession any such book, paper, document or written or printed matter in any form for the purpose or with the intention of distribution, sale, circulation or display thereof, within the City of Bessemer or the police jurisdiction thereof.

"Section Two: That any person violating this ordinance shall be deemed guilty of of a misdemeanor and shall be fined not less than $1.00 nor more than $100.00, and in addition to the fine herein provided for may be sentenced to hard labor for the City for not exceeding one hundred eighty (180) days."

Under section 4305 of the Code of 1923 the right to the writ of habeas corpus is preserved to inquire into the cause of persons illegally restrained of their liberty, but under section 4328 it is provided that, if they are legally detained, they must be remanded.

The conviction and commitment of the petitioner for a violation of an ordinance of the City of Bessemer by the recorder of said city appears on its face to be regular and legal, unless it shall appear that the ordinance itself is void, which question will be subsequently discussed. The petition for habeas corpus is not available as a substitute for an appeal or writ of error or other revisory remedy for the correction of errors either of law or fact. Where the restraint alleged is under legal process, errors and irregularities which do not render the proceeding void are not ground for relief by habeas corpus, because in such cases the restraint is not illegal, nor will the exercise of a discretion given to the trial court be reviewed on habeas corpus. 29 Corpus Juris, p. 24, par. 19. Sneed v. State, 157 Ala. 8, 47 So. 1028; State v. Thurman, 17 Ala.App. 656, 88 So. 61; Towery v. State, 143 Ala. 59, 39 So. 310.

Where, however, the conviction is based upon a void process, or upon a void ordinance of a city, or a statute which is void, writ of habeas corpus will lie. Flowers v. State, 4 Ala.App. 221, 59 So. 238; Chappell v. State, 156 Ala. 188, 47 So. 329; Forrester v. State, 18 Ala.App. 492, 93 So. 279. If, therefore, as is contended by petitioner, the ordinance upon which this prosecution is based is in violation of the Constitution of the State of Alabama, the recorder's court of the City of Bessemer would have no jurisdiction and the petitioner would be entitled to his discharge.

But is this so? Section 4 of the Declaration of Rights provides that "no law shall ever be passed to curtail or restrain the liberty of speech or of the press; and any person may speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that

liberty." This clause of the Constitution, if taken in its broadest sense, might seem to bear out the contention of petitioner's counsel that the Legislature of this state, and therefore its incorporated towns and cities, would have no right or authority to pass any law or ordinance in any way curtailing the right to print or to speak any sentiment, regardless of its effect upon the health, morals, and peace of the people or the stability of the government. Such a broad construction would be unthinkable. There are certain limitations arising out of the police power which gives to the government authority to put certain restraints even upon the freedom of the press and the freedom of speech. Every government has the inherent right of self-preservation and to pass laws to prevent the publishing of articles which tend to corrupt morals, induce crime, or destroy organized society, and such power is necessary and essential to the security of freedom and the stability of the state. There is a vast difference between freedom of the press and the freedom of speech and licentiousness and all courts condemn as not sanctioned by the Constitution of any state appeals designed to destroy the reputation of a citizen, the peace of society, and the existence of the government. In the case of People of State of New York v. Gitlow, 234 N.Y. 132, 136 N.E. 317, a case similar to the one at bar, Crane, Judge, speaking for the New York Court of Appeals, goes at great length into a discussion of the difference between freedom of the press and freedom of speech on the one hand and unbridled license on the other, quoting copiously from Story's Commentaries on the Constitution, par. 1888, concluding with the announcement that the Legislature of New York was within its powers when it enacted the sections there under consideration, which sections were similar to the ordinance we are here considering. This decision is supported in Patterson v. Colorado, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879, 10 Ann.Cas. 689; Schenck v. U. S., 249 U.S. 47, 39 S. Ct. 247, 63 L.Ed. 470; State v. Fox, 71 Wash. 185, 127 P. 1111; State v. Boyd, 86 N.J.Law, 75, 79, 91 A. 586.

■ Judge Story, in his Work on the Constitution (5th Ed.) vol. 2, pars. 1886-1892, both inclusive, fully discusses, with cited authority, the clause of the Constitution preserving the freedom of the press and free speech and concludes with this statement, which we here adopt as being the expression of this court: "No one can doubt the importance, in a free government, of a right to canvass the acts of public men and the tendency of public measures, to censure boldy the conduct of rulers, and to scrutinize closely the policy and plans of the government. This is the great security of a free government. If we would preserve it, public opinion must be enlightened; political vigilance must be inculcated; free, but not licentious discussion, must be encouraged. But the exercise of a right is essentially different from an abuse of it. The one is no legitimate inference from the other. Common sense here promulgates the broad doctrine, sic utere tuo, ut non alienum laedas; so exercise your own freedom as not to infringe the rights of others, or the public peace and safety." And we might well add here that the freedom guaranteed to press and speech would even extend to a change in form even of the government itself by peaceful and lawful means.

The constitutional guaranties of freedom of speech and of the press do not deprive the state of its police power to enact additional laws for the protection of the public health, safety, and morals and the protection of the general welfare. It has been held many times that the Legislature may make it unlawful to use profane language to the disturbance of the public peace, or for a physician to advertise under a false name, or for any person not a licensed physician to advertise to treat and cure diseases; and may forbid the publication of advertisements of the sale of lottery tickets, the publication of false or grossly inaccurate reports of court proceedings, the utterance or publication of any matter inciting or encouraging crime, the publications of the details of an execution for crime, and the publication or sale of a newspaper devoted to criminal news and stories of crime, or to scandal and stories of immoral conduct; and may forbid the sending or delivery of a letter or other written or printed communication threatening to accuse any person of the commission of crime, and many other statutes of a similar nature, as set out in 12 Corpus Juris, 952 (468).

■■ So that, reviewing all of the cases on the subject coming under our consideration, we conclude: "The constitutional liberty of speech and of the press implies a right to freely utter and publish whatever the citizen may please, and to be protected against any responsibility for so doing, ex-

cept so far as such publications, from their blasphemy, obscenity, or scandalous character, may be a public offense, or as, by their falsehood and malice, they may injuriously affect the standing, reputation, or pecuniary interests of individuals. So, also, is it not to be inferred from the prohibition of a censorship of the press, that the press can, without liability for its wrongful use, make use of the constitutional privilege for the purpose of inciting the people to the commission of crime against the public. The newspapers of anarchists and nihilists cannot be subjected to a censorship, or be absolutely suppressed; but if the proprietors should in their columns publish inflammatory appeals to the passion of discontents, and urge them to the commission of crimes against the public or against the individual, they may very properly be punished." Tiedeman's Limitations of Police Power, p. 192.

Under the charter powers granted to the City of Bessemer, it has the authority to pass ordinances for the protection of the rights of its people and for the preservation of its own integrity as a government not inconsistent with the Constitution and statute laws of the state, but an ordinance which unduly limits the freedom of the press or freedom of speech would be in violation of the Constitution, and hence absolutely void.

The present ordinance, is, we think, too broad in its scope, in that it would condemn as a violation the printing, publishing, editing, issuing, or knowingly circulating, selling, distributing, or publicly displaying, any book, etc., or the having in possession of such document for a perfectly lawful purpose. The printing, etc., of such an article as is condemned in the ordinance and the possession of such might be for the purpose of condemning it or refuting it and to be used as a basis of a public discussion for the very purpose of strengthening the government and of condemnation of the doctrines as set out in the printed matter. Under the fundamental principles upon which rests the liberty and stability of the democracy under which we live, public discussion of questions affecting government may not be limited, unless such discussions are for the purpose of a destruction of the government by violent or unlawful means.

If the ordinance had read, It shall be unlawful to print, publish, edit, issue, knowingly circulate, sell, distribute, or publicly display, any book, paper, document, written or printed matter in any form for the purpose of advocating, advising or teaching the doctrine that organized government should be overthrown by force, violence, or any unlawful means, or, with a like purpose to have in possession any such book, etc., the ordinance would have met every objection to its legality and constitutionality, but, omitting as it does the charge as to the purpose and intent of the possession or publishing, the ordinance invades the Constitution and therefore cannot be upheld.

We are cited to the case of Drinkard v. Oden, 150 Ala. 475, 43 So. 578, to sustain an insistence made by the respondent that this court is without authority to pass upon the validity of the ordinance upon which this prosecution is based. But it will be observed that in the case at bar the ordinance is made a part of the petition and, if the same is void, there could be no foundation for the prosecution, while in Drinkard v. Oden, supra, the proceeding was before a court having jurisdiction of the subject matter, and the decision was based upon a well-established rule that a judgment or decree of a court of competent jurisdiction is conclusive and becomes res adjudicata as to a subsequent suit when it is ascertained that the subject matter of the two suits is the same and the issues in the former suit were broad enough to have comprehended all that is involved in the issues in the second suit. The inquiry is not what the parties actually litigated, but what they might and ought to have litigated. Wood v. Wood, 134 Ala. 557, 33 So. 347. In the Drinkard v. Oden Case the question was the formation and trial of issues as between litigants; in the instant case the ordinance is the very basis of the prosecution, giving to the recorder's court jurisdiction, in the absence of which its judgment would be void.

The ordinance upon which the prosecution was based being void, the municipal court was without jurisdiction to try the case.

The order of the circuit court denying the writ is reversed, and a judgment will here be entered discharging the prisoner.

Reversed and rendered.

### On Rehearing.

The writ of habeas corpus is "the great key of liberty to unlock the prison doors of

418

tyranny." Such was the opening sentence of that great jurist, Thomas H. Watts, in the case of Ex Parte Williams, in the county court of Pike county and quoted with approval by this court in State v. Thurman, 17 Ala.App. 656-658, 88 So. 61. It was written in the blood of freemen and came to us as a part of our inheritance from those who won it and preserved it through the centuries, even antedating Magna Charta. It is a part of the law of this state, preserved to us under section 17 of the Declaration of Rights, that it may be used by those who are illegally restrained of their liberty. It cannot be bound down by the thongs of technical pleading, nor its swift and effective relief hindered by captious objection or finespun theories of procedure. The courts ought not and will not permit this sacred right to be whittled away in such manner as to allow a citizen imprisoned contrary to law to be deprived of his liberty.

At the same time, the processes and judgments of courts must be given that consideration to which they are entitled and rules of procedure must be upheld to guarantee an orderly administration of the law. Habeas corpus, therefore, is not available as a substitute for an appeal or writ of error or other revisory remedy for the correction of errors, either of law or fact, and, after judgment, the petition for the writ will only lie to determine the question of the jurisdiction and lawful power of the custodian to hold petitioner in custody. 29 Corpus Juris, 25 (19). Nor will the writ be granted on account of a mere violation of constitutional provisions, or denial of constitutional right, in the course of proceedings during the trial of a cause. In such cases, the matter becomes res adjudicata and can only be tested on appeal or by writ of error. Such is the effect of the holding in Drinkard v. Oden, 150 Ala. 475, 43 So. 578; Ridgeway v. City of Bessemer, 9 Ala.App. 470, 64 So. 189.

But, where a constitutional defect invalidates the proceeding and that fact appears upon the face of the information or complaint, the writ will be granted and the prisoner discharged, for no person should ever be allowed to remain in prison for the violation of an ordinance which was not and never could be the law, by reason of a constitutional inhibition. As is said in the text, 29 Corpus Juris, 30, "the ultimate question involved in habeas corpus proceedings is generally one of jurisdiction. Want of jurisdiction over person or subject matter is always ground for relief on habeas corpus, for if the court has acted without jurisdiction, its judgment or order is absolutely void, even on collateral attack." The foregoing statement of the law is supported universally by courts of last resort all over the United States, as collated in note 15, 29 Corpus Juris, 30.

It may, therefore, be said to be the rule: Where the court had general jurisdiction of the cause and person, error in the determination of questions of law or fact upon which its jurisdiction in the particular case depends is error in the exercise of jurisdiction, and, in accordance with the general rule, affords no ground for habeas corpus; but the unconstitutionality of a statute under which a detention is sought to be sustained is ground for relief on habeas corpus either before or after conviction or commitment for its violation. This rule is sustained by the decisions of the Supreme Court of the United States and the courts of last resort in most of the states of the Union, and especially so in the state of Alabama. Ex parte State, 205 Ala. 677, 88 So. 899; State v. Thurman, 17 Ala.App. 656, 88 So. 61; Fourment v. State, 155 Ala. 109, 46 So. 266; Ex parte Burnett, 30 Ala. 461.

It follows from the foregoing that the application for rehearing must be overruled.

Application overruled.

PER CURIAM.

Affirmed on authority of Barton v. City of Bessemer, 234 Ala. 20, 173 So. 626.